NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

WATSON–RUMMELL ELECTRIC COMPANY, Respondent.

No. 86–5247.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1987.

Decided April 1, 1987.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., John Burgoyne, Margaret Bezou (argued), Washington, D.C., Emil C. Farkas, Director, Region 9, N.L.R.B., Cincinnati, Ohio, for petitioner.

Julius Rather, Danny, Morgan and Rather, Lexington, Ky., Richard L. Wyatt (argued), John Gamble, Atlanta, Ga., for respondent.

Before MERRITT and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

The National Labor Relations Board applies for enforcement of its order against Watson-Rummell Electric Company. Under the terms of that order, Watson-Rummell is required to give retroactive effect to an expired collective bargaining agreement and to cease and desist from any future violations of the terms of that agreement or of the National Labor Relations Act. Watson-Rummmell contests enforcement primarily on the ground that it was entitled to repudiate the contract unilaterally because of its special status as a construction industry employer under § 8(f) of the NLRA, 29 U.S.C. § 158(f). We now enforce the Board's order as to all relief for the period preceding June 1, 1982, and remand to the Board for the limited purpose of determining the applicability of § 8(f) and the effect of such an exemption on the relief ordered.

Watson-Rummell Electric Company employs approximately eight workers to perform electrical contracting services for the construction industry in Lexington, Kentucky. By virtue of a letter of assent dated October 22, 1975, Watson-Rummell became a member of a multi-employer bargaining group that represents electrical contractors in the Lexington area: the Central Kentucky Chapter of the National Electrical Contractors Association, Inc. (NECA). By becoming a member of the NECA group, Watson-Rummell also became a party to the collective bargaining agreement then in effect between NECA and the International Brotherhood of Electrical Workers Local No. 183. The letter of assent specified that in order to withdraw from the NECA, an employer had to give notice to both the NECA and the union at least 150 days before the anniversary date of the collective bargaining agreement then in effect.

Three distinct time periods are relevant to the task of assessing Watson-Rummell's duties towards its employees and their union. The first begins with the signing of the original letter of assent in October, 1975, and continues until the employer effected a timely withdrawal from the bargaining unit on May 31, 1982. The second period begins at the date of this withdrawal and ends with the expiration of the collective bargaining agreement on May 31, 1983. The last period runs from June 1, 1983 to present, thus covering the employer's post-expiration duties. These periods are described below as the pre-withdrawal, post-withdrawal, and post-expiration periods respectively.

The Board found that the employer did not effect a timely withdrawal from the NECA until June 1, 1982, and that Watson-Rummell was bound by the terms of the collective bargaining agreement until it expired on June 1, 1983. In holding Watson-Rummell to the terms of that contract during the post-withdrawal period, the Board necessarily found that withdrawal from the multi-employer bargaining unit did not affect the employer's duties toward its employees while the collective bargaining agreement was in effect. In addition, the Board found that the employer was prohibited under § 9(a) of the NLRA from making unilateral changes in contract terms during the post-expiration period. As a result, the Board's order mandated relief extending through all three periods.

Watson-Rummell takes issue with each of these findings by the Board. Specifically, the employer argues that the Board erred by not properly considering evidence that it withdrew from the NECA prior to June 1, 1982. Watson-Rummell also argues that withdrawal from the NECA extinguished its obligations under the collective bargaining agreement as of the date of withdrawal, without regard for the expiration date of the collective bargaining agreement. The first of these arguments questions relief ordered by the Board for the period from June 1, 1981 to June 1, 1982.[1] The second attacks the remedies instituted by the Board for the post-withdrawal and post-expiration periods.

■ As for Watson-Rummell's first argument, there is substantial evidence in the record to support the Board's finding that withdrawal did not occur before June 1, 1982. The terms of the contract specified a method for terminating participation in the multi-employer bargaining group. That method was not complied with until the letter of December 27, 1981 was received by both the NECA and the union. Furthermore, the employer's conduct during the period in question was not sufficient to communicate an intent to withdraw from the NECA or repudiate the collective bargaining agreement. Under these circumstances, the Board correctly found that the employer was a member of the NECA group and thereby bound by the collective bargaining agreement until June 1, 1982.

The contractual obligations of the company in the post-withdrawal and post-expiration periods are not so clear. Watson-Rummell has consistently and vigorously contested any contractual duties whatsoever in these periods. Although counsel below did not specifically allege Watson-Rummell's § 8(f) status as an excuse, the employer now explicitly relies upon this special exemption. The Board counters by arguing that counsel's failure to allege this status specifically below bars its consideration in this court by virtue of § 10(e) of the NLRA, 29 U.S.C. § 160(e). *See Woelke & Romero Framing v. NLRB*, 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1981).

■ We reject the Board's contention that Watson-Rummell has waived any claim to § 8(f) status because of a failure to invoke its protection specifically below. The specificity required for a claim to escape the ban imposed by § 10(e) is that which will "apprise the Board of an intention to bring up the question." *May Stores v. NLRB*, 326 U.S. 376, 386–87 n. 5, 66 S.Ct. 203, 209 n. 5, 90 L.Ed. 145 (1945). A general objection combined with special circumstances may be sufficient to constitute notice. *Id.*

In this case, the Board should have considered the applicability of § 8(f) to Watson-Rummell. The ALJ found that Watson-Rummell was "an electrical contractor in the construction industry." Joint Appendix at 135. Watson-Rummell consistently asserted that it was under no duty whatsoever to honor the contract beyond May 31, 1981. Furthermore, the testimony offered before the Board regarding Watson-Rummell's operations suggests strongly that it is a § 8(f) employer, and this testimony should have prompted the Board to inquire further into the applicability of the special exemption.

1. Since Watson-Rummell admitted that it was bound by the collective bargaining agreement and its employees were represented by the un-ion until June 1, 1981, the employer's duties during this period are not in dispute. *See* Joint Appendix at 66, 94.

■ Although we hold that Watson-Rummell provided sufficient notice regarding its § 8(f) claim to prevent a waiver, the record before us is insufficient to decide whether the employer is in fact entitled to the exemption and how its contractual duties would be altered. Under *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), the employer's obligations under a collective bargaining agreement are arguably subject to unilateral repudiation at any time before the union demonstrates majority support. *Id.* at 271–72, 103 S.Ct. at 1759. Although this holding appears to discharge the employer from any liability during the post-withdrawal and post-expiration periods, we do not know if the union established majority support at any time prior to Watson-Rummell's repudiation. Accordingly, we must remand to the Board to consider the applicability of § 8(f) in the present case, and the effect this exemption would have on relief ordered past May 31, 1982.

The portion of the Board's order mandating relief for the period prior to June 1, 1982 is hereby enforced. That portion of the order extending beyond June 1, 1982 is not enforced and the case is remanded to the Board for additional proceedings as outlined in the opinion above.