**TRUSTEES OF the NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND, et al.**

v.

**AMERICAN AUTOMATIC FIRE PROTECTION.**

**Civ. No. JFM–86–3613.**

United States District Court, D. Maryland.

Jan. 13, 1988.

Kenneth M. Johnson, Rockville, Md., for plaintiffs.

Eric Hemmendinger, Baltimore, Md., Robert L. Rediger, Sacramento, Cal., for defendant.

## MEMORANDUM

MOTZ, District Judge.

Plaintiffs, the trustees of several multi-employer employee benefit plans, claim that defendant failed to make contributions to the plans pursuant to prehire agreements into which defendant had entered with the United Association of Plumbers and Pipefitters, Sprinkler Fitters Local 669 ("Local 669") and the Sprinkler Fitters and Apprentices Local Union 483 ("Local 483"). The action is brought under Sections 502 and 515 of the Employee Retirement Income Security Act, 29 U.S.C. Sections 1132, 1145 (1982), and under Section 301 of the Labor–Management Relations Act, 29 U.S. C. Section 185(a)(1982).

Defendant has moved for partial summary judgment. The motion raises several issues, including two of rather broad importance: (1) whether or not the rule adopted by the National Labor Relations Board in *John Deklewa and Sons*, 282 N.L.R.B. No. 84 (February 20, 1987), prohibiting unilateral repudiation of a prehire agreement should be given retroactive effect in a Section 301/ERISA action, and (2) whether, if that rule is not to be applied retroactively, the trustees of union benefit plans may recover under pre-*Deklewa* law for payments allegedly due to them after an employer's repudiation of a prehire agreement, despite the absence of a timely challenge to the repudiation before the NLRB.

## BACKGROUND

Defendant was signatory to a series of prehire agreements, authorized by Section 8(f) of the National Labor Relations Act, 29 U.S.C. Section 158(f) (1982), with Local 669 and Local 483. These agreements adopted master agreements between the union and a multi-employer bargaining unit of which defendant was a part. Defendant was obligated under these agreements to contribute to the employee benefit plans of which plaintiffs are the trustees scheduled pay-

ments for each hour worked by defendant's employees who were covered by the agreements. The agreement between defendant and Local 669 covered the period from April 1, 1982 through March 31, 1985. There were two agreements between defendant and Local 483; by their terms, they were effective from August 1, 1981 through July 31, 1984 and from August 1, 1984 until July 31, 1987, respectively.

On November 29, 1985, defendant sent a letter to Local 483 expressly repudiating the prehire agreement then in effect. In response, Local 483 brought an action in the Federal District Court for the Eastern District of California, seeking a declaratory judgment that defendant was still bound by the agreement. On May 7, 1987, the Court dismissed the action for lack of subject matter jurisdiction. Local 483 did not appeal the dismissal.

On July 7, 1986, counsel for Local 483 had written counsel for plaintiffs in this action. He stated that, in reviewing documents in connection with the California suit, he had discovered that defendant had been doing non-union work five months prior to its repudiation of the 8(f) agree-

ment, and he inquired if the trustees would be interested in bringing an action against defendant for back payments due for non-union workers as to whom defendant had not made payments to the pension funds. This suit was instituted on December 1, 1986.[1]

## DISCUSSION

*Retroactivity of the Deklewa Rule Prohibiting Unilateral Repudiation of 8(f) Agreements*

■ Although the letter from Local 483's counsel to the trustees' counsel appears to suggest only that the trustees bring an action for back payments due prior to defendant's repudiation of the 8(f) agreement, the trustees also have asserted claims in this action not only for pre-repudiation payments but also for payments due after the repudiation (on November 27, 1985) through July 31, 1987, the expiration date set forth in the repudiation agreement. Their first argument in support of this claim is based upon the NLRB's *Deklewa* decision.[2]

1. In their summary judgment memoranda the parties made no mention of any unfair labor practice charge having been filed by Local 483 with the NLRB concerning defendant's repudiation of the 8(f) agreement. A passing reference to two such charges was made, however, in an affidavit submitted by the president of defendant. The affidavit stated that these charges, filed on April 30, 1987 and June 2, 1987, respectively, had been dismissed by the Board. Because the charges were filed substantially more than six months after the repudiation occurred, it appeared that their dismissal was based upon their untimeliness, and the Court wrote to counsel to confirm that this was true. In response, counsel have advised the Court that a related 8(a)(3) charge had been filed by Local 483 on May 2, 1986, and that, although the Board's Regional Director had initially dismissed the 1987 charges as untimely, on appeal the Board's General Counsel decided to issue a complaint in connection with the 1986 charge and one of the 1987 charges. That complaint is now being prosecuted.

The parties' failure to bring these Board proceedings to the attention of this Court is inexplicable and inexcusable. Their pendency obviously provides an additional reason for this Court to decline to determine the validity of defendant's repudiation of the 8(f) agreement in this action. *See, e.g., Carpenters Local Union*

*No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 515 (5th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). However, since plaintiffs maintain that they may bring this action regardless of the pendency of the proceedings which Local 483 has initiated before the Board and regardless of the timeliness of Local 483's charges with the Board, the issues addressed in this opinion (which is written on the premise that no timely charge was filed with the NLRB) must be resolved. Of course, an entirely different question will be presented if the Board ultimately determines that defendant's repudiation of the 8(f) agreement was ineffective, if the timeliness of Local 483's charges is upheld, and if plaintiffs then seek in this or a newly instituted District Court action collateral relief, such as liquidated damages and interest, which are recoverable under ERISA, see 29 U.S.C. Section 1132(g)(2) (1982), but which plaintiffs contend could not be awarded by the administrative law judge in the Board proceedings.

2. The parties have framed the issue presented as "whether *Deklewa* should be applied retroactively." This is oversimplified and misleading because, as discussed *infra*, the rule adopted in *Deklewa* prohibiting unilateral repudiation is only part of a broader holding directing that majority status disputes arising under 8(f)

A series of rules had developed under pre-*Deklewa* law establishing what was, in effect, a protocol for the resolution of majority status disputes arising under prehire agreements. At its inception, an 8(f) agreement was simply a "preliminary step that contemplate[d] further action for the development of a full bargaining relationship." *Ruttmann Construction Co.*, 191 N.L.R.B. 701, 702 (1971). At this stage the agreement conferred no presumption of majority status for the union, and either party could repudiate it at any time for any reason. If an employer did repudiate the agreement, the union could then litigate its status in an 8(a)(5) proceeding by filing an unfair labor practice charge with the NLRB.[3] If the Board determined that the union had attained majority status at any time during the life of the 8(f) agreement, the agreement would be deemed to have been "converted" into a binding collective bargaining agreement, fully enforceable under the Labor Management Relations Act. Further, if the Board found that the union had attained majority status and that the repudiation had therefore constituted an unfair labor practice, it could have included in the relief which it granted an award of all payments which the employer had failed to make under the 8(f) agreement after repudiation.

In *Deklewa*, the Board changed these rules. An employer no longer has the right to repudiate unilaterally an 8(f) agreement. If a union's majority status is challenged, the only way that it can be tested is by a Board-conducted election prompted by a petition filed under Section 9(c) of the National Labor Relations Act, 29 U.S.C. Section 159(c) (1982). In the interim, the employer is required to comply with the terms of the 8(f) agreement, including the making of all payments due thereunder.

In *Deklewa*, the Board determined that the anti-repudiation rule should be applied retroactively to all cases pending before the Board at any stage. In making this

determination, the Board had to balance various competing factors. On the one hand, the Board had to consider the potential unfairness to employers of imposing upon them additional obligations and liabilities to which they were not subject when they entered into 8(f) agreements under pre-*Deklewa* law. On the other hand, the Board had to take into account the public interest in immediately implementing more effectively the policies of promoting employee free choice and labor relations stability underlying the Labor Management Relations Act. Likewise, the Board was concerned about being "required for an indefinite period of time to perpetuate the administrative and litigational difficulties entailed in application of arcane current law to all pending 8(f) cases." *Deklewa*, 282 N.L.R.B., slip op. at 42.

Since *Deklewa*, two courts have decided the question of whether the anti-repudiation rule should be applied retroactively in non-administrative litigation. One of these courts decided that it should be applied retroactively, the other that it should not. *Compare National Elevator Industry Welfare Plan v. Viola Industries, Inc.*, —— F.Supp. ——, No. 84–2286–S (D.Kan. May 6, 1987) (LEXIS, Genfed library, Dist. file) *with Construction Industry Welfare Fund v. Jones*, 672 F.Supp. 291 (N.D.Ill. 1987); *see also Mesa Verde Construction Co. v. Northern California District Council of Laborers*, 820 F.2d 1006 (9th Cir. 1987), *reh'g en banc granted, prior opinion withdrawn*, 832 F.2d 1164 (9th Cir. 1987).

This Court is of the view that, in a Section 301/ERISA action such as this, pre-*Deklewa* repudiations should not be held to have been void. This conclusion is based not upon any disagreement with the balance struck by the Board in *Deklewa* but upon fundamental differences between the two contexts in which retroactive application of the rule is sought. The Board's decision in *Deklewa*, given the circumstanc-

---

agreements be resolved by election rather than litigation.

**3.** The question of the union's status could also, of course, be resolved by an election conducted pursuant to a petition filed under 29 U.S.C. Sections 159(c) or 159(e).

es there present, was entirely reasonable. Although there inevitably is a degree of unfairness whenever rules are changed midstream, it makes sense to rule, as the Board did, that the new and better rules should be applied immediately to all 8(f) agreements presently in effect and in all cases where an 8(f) agreement has been recently repudiated and in which an election to test the union's majority status can now be held.[4] The interests of uniformity, clarity, ease of application and effective promotion of fundamental statutory policies all dictate that result. However, the considerations relevant to determining whether the anti-repudiation rule should be applied retroactively in Section 301/ERISA cases are quite different.

First, it is analytically unsound to consider the rule in a vacuum. It must be understood against the background of the overriding principle enunciated in *Deklewa* from which it is derived: that majority status disputes arising under 8(f) agreements should be resolved by election rather than by litigation. In the present case, as in all cases involving strictly historical disputes, a representation election can no longer be effectively held. Thus, to apply the anti-repudiation rule retroactively would be to give only selective retroactive effect to the *Deklewa* holding.

Second, it is in cases such as this that the unfairness to employers of retroactive application of the anti-repudiation rule is most manifest. If the rule were to be applied retroactively, employers would be subjected to a penalty for having taken action which was entirely lawful under pre-*Deklewa* law without being afforded the opportunity to have their assertion of the union's lack of majority status tested either by election or by litigation. *Cf. Construction Industry Welfare Fund v. Jones, supra* at 294.

Third, none of the interests which the Board properly found to compel retroactive application of the anti-repudiation rule to cases pending before it are present here. Retroactive application of the rule would not serve either the policy of employee free choice or the policy of labor relations stability. Similarly, since (as discussed *infra*), majority status questions are not properly resolvable in Section 301/ERISA litigation such as this, the Board's concern about the litigation difficulties that would result should the old rules continue to apply is not present here.

*Recoverability of Post–Repudiation Contributions Under Pre–Deklewa Law*

 Since the *Deklewa* anti-repudiation rule is not applicable here, the question next becomes whether plaintiffs may recover for contributions allegedly due after defendant's repudiation by proving that Local 483 had attained majority status during the life of the 8(f) agreement. This question cannot be easily resolved, as defendant suggests, by talismanic invocation of the "primary jurisdiction" doctrine. That doctrine is so vaguely defined and subject to so many exceptions that its very existence is open to doubt. However, there is legitimacy and viability in the principle that, generally, matters which fall within the peculiar competence of the NLRB should be resolved by the NLRB and that courts should therefore decline to take cognizance of claims which are (or were) properly remediable through the processes of the Board. Thus, the approach which suggests itself in cases such as this is to inquire whether the issue presented is one which falls within the domain which the Board is charged to oversee and, if so, to determine if there are circumstances present which nevertheless warrant judicial intrusion into that domain.

---

**4.** The cases now before the Board as to which the anti-repudiation rule has been made applicable which are closest to the instant case are ones like *Deklewa* itself where the repudiation occurred long ago, the case has been pending for some time and no representation election can now be held (either because their agreement has expired by its own terms or because circumstances have changed with the passage of time). Even in those cases, however, retroactive application of the anti-repudiation rule is far more justified than here since, at least, the union had challenged the repudiation by filing within six months of the repudiation a timely unfair labor practice charge with the Board under the old rules.

No issue could be more "representational" than the one presented in this case: whether a union attained majority status during the life of an 8(f) agreement. Thus, presumptively the issue is one which should have been resolved by the Board. No factors exist which would justify the overturning of this presumption. This is not a case involving enforcement of an arbitration clause and thus implicating the strong federal policy in favor of arbitration. Cf. *United Brotherhood of Carpenters & joiners of America, Local Union No. 1694 v. W.T. Galliher & Bros. Inc.*, 787 F.2d 953 (4th Cir.1986). It is not a case where the Board, as a matter of policy, would have been unwilling to consider the merits of the dispute had a timely charge had been filed with it. Cf. *John S. Griffith Construction Co. v. United Brotherhood of Carpenters & Joiners*, 785 F.2d 706 (9th Cir.1986); *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557 (9th Cir.1984); *United Brotherhood of Carpenters & Joiners v. W.T. Galliher & Bros., supra.* Similarly, this is not the type of case where it is unlikely that an interested party would seek to pursue its (and derivately, the trustees') rights before the Board. *Compare Laborers Health and Welfare Trust Fund v. Kaufman & Broad of Northern California, Inc.*, 707 F.2d 412, 416 (9th Cir.1983). Although the trustees themselves could not have challenged defendant's repudiation of the 8(f) contract and litigated the question of Local 483's majority status before the Board, Local 483 clearly had both the right and the motivation to do so. In such a case, while the trustees

may not technically be in privity with the union, the policy interest in labor stability strongly supports resolution of majority status questions in proceedings before the Board, timely instituted by the allegedly aggrieved union, and not in third-party litigation which resurrects disputes which have in their own course passed by.[5]

The Ninth Circuit has adopted an approach which would yield an opposite conclusion to that reached here. Under its approach the critical jurisdictional question is whether the inquiry which is being made is into the union's current or into its past representational status; if the latter, a court does have jurisdiction to entertain the case. *See United Brotherhood of Carpenters & Joiners of America v. Endicott Enterprises, Inc.*, 806 F.2d 918 (9th Cir. 1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987).[6] This approach was first enunciated by the Ninth Circuit in its opinion in *Todd v. Jim McNeff, Inc.*, 667 F.2d 800, 804 (9th Cir.1982), *aff'd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). The Ninth Circuit has read the Supreme Court's affirmance of this decision as endorsing the view that, in determining whether or not a repudiation of an 8(f) contract has occurred, a court must determine whether or not that repudiation was "effective," i.e. whether or not the union had attained majority status prior to it. *See, e.g., Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d at 564.

This Court believes that the Ninth Circuit has read the Supreme Court's opinion in *McNeff* too broadly. The Court there held only that an employer must meet all of

---

5. Relevant to the interest of labor stability is the fact that the claims asserted by plaintiffs here are governed by a three year statute of limitations as opposed to the six month statute applicable to an unfair labor practice charge filed to challenge a repudiation. Perhaps even more compelling is the fact that the limitations period in ERISA cases is virtually endless in light of the discovery or tolling rule which this Court, at the urging of plaintiffs, is adopting. *See infra.*

6. Although the approach being adopted by this Court differs from that of the Ninth Circuit, the results in at least some of the Ninth Circuit cases might well be the same under either approach. For example, as indicated above, *John*

*S. Griffith Construction* and *Endicott Enterprises* are distinguishable from the present case in that they involve situations in which the Board declined to resolve the majority status question. *Endicott Enterprises* is further distinguishable (as is the Tenth Circuit's decision in *Trustees of Colorado Statewide Iron Workers Joint Apprenticeship & Training Trust Fund v. A. & P. Steel, Inc.*, 812 F.2d 1518 (10th Cir.1987)) on the ground that the question of whether the union had attained majority status was intertwined with the question of whether the employer had by its conduct repudiated the 8(f) agreement at all.

its monetary obligations under an 8(f) agreement prior to repudiating that agreement. It did not expressly address the question here presented, and, to the extent that it may have done so implicitly, it is at least as fair to infer from what it said that an employer's contractual obligations under an 8(f) agreement enforceable in a section 301 action are deemed to terminate immediately upon repudiation. Thus, the Court emphasized "the voidable nature of prehire agreements" *McNeff*, 461 U.S. at 270, 103 S.Ct. at 1759. Further, its concluding sentence carefully limited its holding as applying only to section 301 actions which are "brought by a union prior to the repudiation" of a prehire agreement and which attempt to recover "the monetary obligations assumed by an employer under a prehire agreement." *Id.* at 271–72, 103 S.Ct. at 1759.[7] This holding clearly does not control a Section 301/ERISA action, such as this, which is brought after repudiation and which seeks recovery of contributions allegedly due after repudiation.

This is not to say that the Ninth Circuit's approach has been foreclosed by the Supreme Court; the fairest reading of *McNeff* is that it leaves open the question here presented. Rather, this Court believes that the fallacy in the Ninth Circuit's test is that it, like the "primary jurisdiction" doctrine, is too crude a tool of analysis to employ. The question of the pre-repudiation status of a union under an 8(f) agreement can arise in too many contexts, both historical and current, to say that it should always be, or never can be, judicially resolved. What is critical to the exercise of sound judgment is to determine when and why a court should intervene in deciding the question, and that determination can be made only by an approach which is sufficiently principled to prevent arbitrariness but sufficiently flexible to aid, rather than block, the process of reasonable inquiry.

*Ancillary Issues*

Defendant seeks to limit the scope of plaintiffs' claims in two other respects. First, it contends—as to Local 483—that payments allegedly due during a period in 1984, when no written agreement allegedly was in effect between Local 483 and defendant, should be excluded. Second, it contends—as to both Local 483 and Local 669—that no recovery should be permitted for any contribution allegedly due prior to December 1, 1983, the date three years before suit was filed.

 The first of these contentions is founded upon a trilogy of recent cases holding that a federal district court lacks subject matter jurisdiction to entertain an action initiated by a multi-employer employee benefit fund under ERISA to collect unpaid contributions accruing after the expiration of a labor agreement. *See New Bedford Fishermen's Welfare Fund v. Baltic Enterprises, Inc.*, 813 F.2d 503 (1st Cir.1987) *petition for cert. filed,* May 20, 1987; *U.A. 198 Health & Welfare, Education & Pension Funds v. Rester Refrigeration Service Inc.*, 790 F.2d 423 (5th Cir.1986); *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co. Inc.*, 779 F.2d 497 (9th Cir. 1985), *cert. granted,* 107 S.Ct. 1283, 94 L.Ed.2d 142 (1987).

These cases quite properly hold that a federal district court should not entertain an action initiated by a multiemployer employee benefit fund under ERISA to collect unpaid contributions accruing after the expiration of a labor agreement. To rule otherwise would be to embroil the district courts in determining whether or not an impasse in bargaining has occurred after the expiration of a collective bargaining agreement, a question which the NLRB is peculiarly competent to decide. *Baltic Enterprises, Rester Refrigeration* and *Advanced Lightweight Concrete* are not ap-

---

7. Immediately before this penultimate sentence the Court stated, "A § 8(f) prehire agreement is subject to repudiation until the union establishes majority status." It is this sentence which the Ninth Circuit reads as supporting its approach. Although this reading is defensible, it is likewise not compelled. The word "establishes," as op-

posed to the word "attains" (used by the Court in the penultimate sentence), seems to connote the union having demonstrated its majority status by election or Board proceeding. This ambiguity may well have been intentional. *See McNeff*, 461 U.S. at 271 n. 13, 103 S.Ct. at 1759 n. 13.

posite to the present case, however. Here, there is no question of impasse which needs to be resolved. Upon the expiration of the August 1, 1981 to July 31, 1984 master agreement between Local 483 and the multi-employer group of which defendant was a part, a strike lasting slightly over one month occurred. However, the strike ended with the successful negotiation of a new agreement which, by its terms, was effective from August 1, 1984 to July 31, 1987. Plaintiffs are simply seeking to collect payments due under the express terms of that agreement.[8]

 Defendant's attempt to limit plaintiffs' recovery to payments which become due only during the three year period prior to the institution of suit is also unavailing. Defendant's premise is correct; Maryland's three-year statute of limitations does apply. *See Fox v. Mitchell Transport, Inc.,* 506 F.Supp. 1346, 1350 (D.Md.), *aff'd mem.,* 671 F.2d 498 (4th Cir.1981); *Rector v. Local Union No. 10, International Union of Elevator Constructors,* 625 F.Supp. 174, 179 (D.Md.1985). However, whether federal law or Maryland law is deemed to apply to the issue, *compare Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975) and *Adkins v. General Motors Corp.,* 573 F.Supp. 1188, 1192 (S.D.Ohio 1983), *aff'd,* 769 F.2d 330 (6th Cir.1985) *with Northwest Administrators, Inc. v. Eugene Sand & Gravel Inc.,* 82 Lab Cas. (CCH) Para. 10,098 (D.Or.1977), [Available on WESTLAW, 1977 WL 1715], the discovery rule also applies. *See, e.g., Cox v. Stanton, supra; Holsey v. Bass,* 519 F.Supp. 395, 412 n. 35 (D.Md.1981), *aff'd sub nom., Todd v. Baskerville,* 712 F.2d 70 (4th Cir.1983); *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680–81 (1981); *cf. Holmberg v. Armbrecht,* 327 U.S. 392,

397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); *Morley v. Cohen,* 610 F.Supp. 798, 819 n. 20 (D.Md.1985). Under this rule, since the evidence would support a finding that defendant submitted incomplete reports to plaintiffs which prevented them from knowing that contributions which were due were not being made, a factual question is presented which cannot be decided on summary judgment.

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is, this 13th day of January 1988

ORDERED that defendant's motion for partial summary judgment be granted in part and denied in part as follows:

1. The motion is granted insofar as plaintiff asserts claims for contributions allegedly due under defendant's 8(f) agreement with Local 483 subsequent to November 29, 1985;

2. The motion is denied insofar as plaintiff seeks to recover contributions allegedly due under the Local 483 agreement during the period August 1, 1984 to December 26, 1984; and

3. The motion is denied insofar as plaintiffs seek to recover payments allegedly due under either the Local 483 agreement or the Local 669 agreement prior to December 1, 1983.

---

**8.** The 1984–1987 agreement was not signed by Local 483 and defendant as between themselves until December 26, 1984. Thus, defendant makes the related argument that throughout the August 1, 1984 to December 26, 1984 period there was no written agreement authorizing the trust fund payments. *See* 29 U.S.C. Section 186(c) (1982). This argument ignores the meaning and purpose of the "written agreement" requirement: to prevent corruption of the collective bargaining process by the making of "contributions exacted from employers but ... ad-

ministered by union officials without any obligation to account to the contributors or to the union membership." *Moglia v. Geoghegan,* 403 F.2d 110, 115 (2d Cir.1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969); *see also Cement Masons Health and Welfare Trust Fund v. Kirkwood–Bly, Inc.,* 520 F.Supp. 942 (N.D.Cal.1981); *aff'd,* 692 F.2d 641 (9th Cir. 1982). The agreement in question here is fully sufficient to meet that purpose. The fact that defendant did not sign it until December 26, 1984 is simply not germane.