**TRUSTEES FOR MICHIGAN LABORERS HEALTH CARE FUND, State of Michigan Laborers District Council Pension Fund, State of Michigan Laborers District Council Training and Education Fund; Trustees for Michigan Carpenters Council Health Care Fund, Michigan Carpenters Council Pension Fund, Michigan Carpenters Council Apprenticeship & Training Fund, and Michigan Chapter, Associated General Contractors of America, Plaintiffs,**

v.

**M.M. VANDER VEEN CONSTRUCTION CO., Defendant.**

No. L88–51–CA5.

United States District Court, W.D. Michigan, S.D.

March 15, 1989.

Durant, Freeberg, Schanz & Connelly by Edward R. Freeberg, Kalamazoo, Mich., for Laborers.

Gemrich, Moser, Bowser, Fette & Lohrmann by Randall S. Schau, Kalamazoo, Mich., for Carpenters.

Howard & Howard by Brad A. Rayle, Thomas M. Ripley, Bloomfield Hills, Mich., for defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Defendant employer moves for summary judgment on plaintiff fund trustees' claims for contributions for (1) periods after the defendant employer allegedly repudiated a prehire agreement with the union site, and (2) periods after the expiration of controlling collective bargaining agreements.

Defendant employer M.M. Vander Veen Construction Company (Vander Veen) is a construction company. Plaintiffs are trustees for employee benefit funds, established pursuant to 29 U.S.C. §§ 186 and 1001, and a general contractor's association. Specifically they are: (1) Trustees for Michigan Laborers Health Care Fund, State of Michigan Laborers District Council Pension Fund, State of Michigan Laborers District Council Training and Education Fund (Laborers), (2) Trustees for Michigan Carpenters Council Health Care Fund, Michigan Carpenters Council Pension Fund, Michigan Carpenters Council Apprenticeship & Training Fund (Carpenters), and (3) Michi-

gan Chapter, Associated General Contractors of America (Contractors).

All three plaintiffs seek contributions from Vander Veen based upon *collective bargaining agreements* obligating Vander Veen to contribute to the Carpenters and Laborers funds and the Contractor's Industry Advancement Contributions fund. Plaintiff Laborers also asserts that an *Employer Registration* form between the Trustees for Michigan Laborers' Insurance Fund, Michigan Laborers' Vacation Fund, and State of Michigan Laborers' District Council Pension Fund and Vander Veen obligates Vander Veen to contribute to the funds.

Defendant Vander Veen has entered into various collective bargaining agreements with plaintiffs dating back to at least 1970. Vander Veen did not enter these collective bargaining agreements as a member of a multi-employer bargaining organization, such as, the Southwestern Michigan Contractors' Association, Michigan Chapter, Associated General Contractors of America (Contractors). Rather, Vander Veen entered into the collective bargaining agreements under a separate contract as "an employer who is not a member of the signatory group covered" by the collective bargaining agreement between the Contractors and Laborers or Carpenters. On April 9, 1970, Vander Veen signed an employer registration form (Laborers' Exhibit E) which obligated Vander Veen to contribute to the employee benefit funds as specified in the current and future collective bargaining agreements between the Contractors and Laborers. The registration form also purported to obligate Vander Veen to abide by all terms of the trust plans then in effect or amended. It also contained a year-to-year roll-over provision with a 60 day pre-anniversary notice requirement for termination. Further, the agreement applied to all of Vander Veen's work within a 23 county area in which the Laborers' operated. On October 18, 1971, (Plaintiffs' Exhibit F) March 9, 1979, (Plaintiffs' Exhibit F) and June 15, 1979, (Plaintiffs' Exhibit I) Vander Veen similarly obligated itself to the terms and conditions of collective bargaining agreements with the Carpenters. That agreement also contained a roll-over provision obligating Vander Veen under subsequent agreements between the Contractors and Carpenters. Essentially these agreements obligated Vander Veen to comply with the terms of the collective bargaining agreements between the Contractors and the Laborers and Carpenters from term to term for projects in the areas in which the Laborers and Carpenters operated. Other agreements also exist in which handwritten terms limit their scope to commercial as opposed to residential construction (Plaintiffs' Exhibits H and J) or to a specific project.

During the period relevant to this action Vander Veen appears to have operated throughout southwest Michigan as a project-to-project employer (*See* Vander Veen Deposition). One of these projects was construction work in Grand Haven, Michigan, at a Meijers, Inc. facility. (Grand Haven project). On July 13, 1984, Vander Veen notified the Carpenters and the Laborers unions and their affiliated benefit funds, including all plaintiffs in this present action, that Vander Veen was repudiating all prehire agreements relating to the Grand Haven project. Specifically the letters stated:

> You are hereby notified that the M.W. Vander Veen Company repudiates such agreement *as it relates to the work conducted on the job site of Meijer Store No. 18*, Grand Haven, Michigan. From and after this date, M.W. Vander Veen Company will not be bound by any of the terms of such agreement on the above project, and will not be obligated to make fringe benefit contributions called for in the agreement based on such work. (emphasis in original)

In its present motion employer Vander Veen moves for summary judgment on plaintiff fund trustees' claims for contributions for (1) periods after the defendant employer allegedly repudiated a prehire agreement with the unions as to the Grand Haven project, and (2) periods after the expiration of controlling collective bargaining agreements. The parties dispute the

legal effect of both the employment agreements and recent case law on their claims. This Court must decide whether it, as opposed to the National Labor Relation Board (NLRB), has jurisdiction over an action in which significant union representational issues exist. Also, this Court must decide whether to retroactively apply the recent case of *John Deklewa & Sons*, 282 NLRB 184, *aff'd* 843 F.2d 770 (3rd Cir.1988), which declared unilateral repudiations of prehire agreements to be ineffective. Further, if *Deklewa* does not apply retroactively, then this Court must determine whether Vander Veen's attempted repudiation of the prehire agreement was effective. Additionally, this Court must determine the effect of the attempted repudiation on the employer registration form. Finally this Court is requested to when the collective bargaining agreements expired and whether plaintiffs can enforce the expired collective bargaining agreements.

*Jurisdiction*

■ This Court must decide whether it has jurisdiction over this action under Section 301 of the Labor Relation Management Act of 1947, 29 U.S.C. § 185, (Taft–Hartley) and Section 502 of the employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132, (ERISA) as an action arising out of an alleged past, not current, violation of a collective bargaining agreement. However, plaintiffs' claims implicate representational issues of the unions' majority status, which are within the original jurisdiction of the NLRB. *National Automatic Sprinkler Industry Pension Fund v. American Automatic Fire Protection*, 680 F.Supp. 731 (D.M.D.1988). Even though representation issues are within the primary jurisdiction of the NLRB, Vander Veen has presented no authority holding that the NLRB has *exclusive* jurisdiction over representational issues. Moreover, the present case does not involve current employment for representational purposes. Rather it concerns the majority status of the unions on a completed project for accounting, and not current representational, purposes. This Court determines that the representational issue in this action does not deprive this Court of jurisdiction over this action.

*Retroactive Application of Deklewa*

■ Plaintiffs argue that under *John Deklewa & Sons*, 282 NLRB 184, *aff'd* 843 F.2d 770 (3rd Cir.1988), Vander Veen cannot effectively argue that it repudiated its prehire agreements with the unions. In *Deklewa* the NLRB held that unilateral repudiations of prehire agreements are ineffective and applied its ruling to all cases pending before it. Prior practice required the union to litigate before the NLRB the issue of the union's majority status, if the union contested the employer's repudiation of a prehire agreement. After *Deklewa* an NLRB election would determine a union's majority status. The NLRB reasoned that a "no unilateral repudiation" rule would promote free choice by employees and stability in labor relations.

Retroactive application of case law requires careful analysis. In *Mesa Verde Construction Company v. Northern California District Council of Laborers*, 820 F.2d 1006 (9th Cir.1988), the court remanded an appeal on the issue of *Deklewa*'s retroactivity to be decided in accord with the Supreme Court's analysis of the propriety of retroactive application of decisions in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In *Chevron* the Court considered: (1) whether the new decision overruled clear precedent on which litigants had relied or resolved a question of first impression which was not clearly foreshadowed, (2) the merits and demerits of the particular case and the purpose and effect of rule to determine whether retrospective application would advance its purpose, and (3) the inequity, hardship, and injustice of retroactive application.

In the present case Veen clearly relied on prior labor practice under the standing law of the Sixth Circuit permitting an employer to repudiate prehire agreements. *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 v. G. & M. Roofing and Sheet Metal Company, Inc.*, 732 F.2d 495

(6th Cir.1984); *NLRB v. Watson–Rummell Electric Company,* 815 F.2d 29 (6th Cir. 1987). Further, no indication exists that the unions contemporaneously contested Vander Veen's repudiation. Moreover, the purposes of the *Deklewa* rule—employee free choice and labor relation stability—will not be promoted by retroactive application in the present case. *See Construction Industry Welfare Fund of Rockford, Illinois v. Jones,* 672 F.Supp. 291 (N.D.Ill.1987); *National Automatic Sprinkler Industry Pension Fund v. American Automatic Fire Protection,* 680 F.Supp. 731 (D.M.D. 1988). Accordingly, this Court does not retroactively apply *Deklewa.*

*Effect of Vander Veen's Repudiation*

■ Vander Veen asserts that the present case involves a prehire agreement. Congress provided for prehire agreements by amending the Taft–Hartley Act of 1947 by the 1959 Landrum–Griffin Act, adding section 8(f), codified at 29 U.S.C. § 158(f). Section 8(f) permits agreements between labor unions and construction industry employers where a union has not yet attained majority status. Without § 8(f) a collective bargaining agreement recognizing a *minority* union as the employees' exclusive bargaining representative would be an unfair labor practice. Section 8(f) acknowledges the temporary and transient nature of employment in the construction industry, precluding NLRB elections at each job site. *NLRB v. Local Union No. 103, Int'l. Assn. of Bridge, Structural & Ornamental Iron Workers, AFL–CIO (Higdon),* 434 U.S. 335, 348, 98 S.Ct. 651, 659, 54 L.Ed.2d 586 (1978). The legislative history of § 8(f) indicates that:

> [I]t is customary for employers to enter into collective bargaining agreements for periods of time running into the future, perhaps 1 year or in many instances as much as three years. Since the vast majority of building projects are of relatively short duration, such labor agreements necessarily apply to jobs which have not been started and may not even be contemplated.... One reason for this practice is that it is necessary for the employer to know his labor cost before making the estimate upon which his bid

will be based. A second reason is that the employer must be able to have available a supply of skilled craftsmen ready for quick referral.

> S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Admin. News 2318, 2344–2345 (S.Rep. No. 187), *as quoted in* 8 T. Kheel, *Labor Law* § 40.04 (1984).

Prehire agreements may exist in various forms according to the purpose they serve. Essentially prehire agreements are labor contracts between an employer and a union that has not yet established its majority status. They may be for a specific term or term to term, a particular project, or area wide. An employer may enter into a prehire agreement as an individual employer, a member of a multiemployer association, or by a short "assent" or "consent" form to the terms of an existing collective bargaining agreement.

A prehire agreement under § 8(f) differs from a binding agreement under § 9(a) in that an employer can repudiate a § 8(f) agreement until the union actually achieves majority status among the employees. *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983); *Higdon, supra; United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 v. G. & M. Roofing and Sheet Metal Company, Inc.,* 732 F.2d 495 (6th Cir.1984); *NLRB v. Watson–Rummell Electric Company,* 815 F.2d 29 (6th Cir.1987); *John S. Griffin Construction Co. v. Carpenters,* 119 LRRM 2247 (C.D.Cal.1984); *Ruttman Construction Co.,* 191 NLRB 701, 702 (1971).

Once a union achieves majority status the § 8(f) prehire agreement is effectively converted into a § 9(a) binding collective bargaining agreement. *Higdon, supra,* 434 U.S. at 345, 98 S.Ct. at 657. However, the extent to which an employer is bound depends on whether the prehire agreement covers a permanent and stable unit of employees. *Construction Erectors, Inc. v. NLRB,* 661 F.2d 801 (9th Cir.1981). If the union has majority status in a *stable unit* when the agreement is executed, then the

agreement is a binding § 9(a) agreement. If the union subsequently achieves majority status in a *stable unit* then a § 8(f) prehire agreement is converted into a binding § 9(a) agreement. But where an employer hires on a project-to-project basis with little employee carry over from job to job, a union's majority status is not presumed to carry over automatically. Rather the union must demonstrate its majority status at each new site. *Construction Erectors, supra; NLRB v. Haberman Construction Co.,* 641 F.2d 351 (5th Cir. 1981); *New Mexico v. Jordan & Nobles Construction Co.,* 802 F.2d 1253 (10th Cir. 1986); *Hageman, Underground Construction,* 253 NLRB 7 (1980); *Dee Cee Floor Covering, Inc.,* 232 NLRB 421 (1977).

The issue in this case is whether a project-to-project employer may legally repudiate an area wide prehire agreement as to one project under contract and continue it as to all other prospective projects. The absence of case law on this issue suggests that this fact pattern is atypical. Repudiating employers typically repudiate prehire agreements as to all prospective projects. Vander Veen claims that its agreements with the Laborers and Carpenters were prehire agreements and that it repudiated those prehire agreements as to a single project by its letter of July 13, 1984. However, plaintiffs contend that Vander Veen cannot repudiate the prehire agreements as to only one project. Plaintiffs argue that a *repudiation* is a total and complete voiding of an agreement and cannot be a partial repudiation limited to only one project. Plaintiffs note that Vander Veen contributed to the funds for its employees on other projects and for the employees on this disputed project when they later worked on other jobs. Further, plaintiffs argue that defendant's status as a project-to-project employer is not relevant to the legal possibility of a partial repudiation. Plaintiffs, however, fail to thoroughly appreciate the exceptional and inchoate character of a prehire agreement.

This Court conditions its analysis by noting the purpose of the § 8(f) exception and the contingent nature of prehire agreements as a preliminary step in the formation of a binding § 9(a) collective bargaining agreement under pre-*Deklewa* case law. The overarching purpose of the National Labor Relations Act is to promote employee free choice and labor relations stability. S.Rep. No. 187. *supra;* H.R.Rep. No. 741, 86th Cong., 1st Sess. 19 *reprinted in* 1959 U.S.Code & Admin.News 2318 (H.R.Rep. No. 741); *Deklewa, supra,* at 778. However, in § 8(f) Congress accommodated the NLRA to the temporary and transitory character of employment in the construction industry. While § 8(f) recognizes the needs of employers to estimate labor cost and maintain ready access to skilled labor, it also affords sporadically employed construction workers the benefits of union membership. S.Rep. No. 187, *supra;* H.R.Rep. No. 741, *supra.* Although unilateral repudiations may not readily promote employee free choice or labor relations stability, pre-*Deklewa* case law and NLRB decisions permitted them. *R.J. Smith Constr. Co.,* 191 N.L.R.B. 693 (1971), enforcement denied *sub. nom. Local 150, Int'l Union of Operating Eng'rs v. NLRB,* 480 F.2d 1186 (D.C.Cir.1973); *Ruttman, supra.* Moreover, under pre-*Deklewa* law, in the case of a *project-to-project* employer, under a term or area wide agreement, a union's majority status at one job site did not carry over presumptively to another job site. Rather, the union had to demonstrate its majority status at each successive job site. Although this practice may not readily promote employee free choice or labor relations stability, it did not contravene the purpose of § 8(f) to provide employers access to a ready labor supply and enable them to estimate labor costs accurately under a prehire agreement.

Before a union achieves majority status, § 8(f) agreements are "entirely voidable" because a union with nonmajority status cannot legally enter into a binding collective bargaining agreement. *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983); *Haberman,* 641 F.2d at 365; *John S. Griffin Construction Co. v. Carpenters,* 119 LRRM 2247 (C.D. Cal.1984); *Ruttman Construction Co.,* 191

NLRB 701, 702 (1971). In the context of project-to-project employment, under pre-*Deklewa* law, a union's majority status at one job site converts a term or area wide prehire agreement into a binding collective bargaining agreement only as applied to that job site. Further, a union's majority status at one site does not presumptively carry over to other job sites covered by the prehire agreement. *Dee Cee Floor Covering, supra; Haberman, supra.* Of course, under pre-*Deklewa* law repudiation of a prehire agreement cannot void or terminate prehire agreements that have been converted into binding collective bargaining agreements. Typically repudiation of a prehire agreement applies to both to the then disputed project and to other future projects. *Jordan & Nobles, supra.* However, no case holds that repudiation of a prehire agreement by a project-to-project employer *necessarily* voids a prehire agreement as to all future projects. Each case cited by plaintiffs as requiring total prospective repudiation factually reflects that the repudiating employers also intended a total prospective repudiation of the prehire agreement. *New Mexico v. Jordan & Nobles Construction Co.*, 802 F.2d 1253, 1255–1256 (10th Cir.1986); *Painters v. Epley*, 764 F.2d 1509, 1512 (11th Cir.1985); *NLRB v. Haberman*, 641 F.2d 351, 365 (5th Cir. 1981).

The present case is unique in that Vander Veen specifically limited its repudiation to a single project. Permitting a project-to-project employer to repudiate a prehire agreement as to only one project advances the purpose of § 8(f). It provides employers with a ready supply of skilled workers and enables them to estimate labor costs. It also affords workers with the benefits of union membership under a continuing prehire agreement, at least until repudiation, if the union does not achieve majority status. However, the purposes of § 8(f) will be frustrated, if a project-to-project employer who repudiates an area wide prehire agreement as to one project necessarily voids the prehire agreement as to all future projects. The employer will not have ready access to skilled labor under the contract and will not be able to estimate its labor

costs reliably. Moreover, the workers will potentially have the benefits of union membership without the necessity of establishing another prehire agreement.

Thus, this Court determines that, under pre-*Deklewa* law, in the context of project-to-project employment an employer may "repudiate" a prehire agreement as to a single project at which the union has not achieved majority status without terminating or voiding the agreement as to future projects. Further, this Court will grant Vander Veen's motion for summary judgment, if no genuine issues of material fact exist as to whether the agreement was a prehire agreement, whether Vander Veen was a project-to-project employer, and whether the unions enjoyed majority representational status at the project.

As the NLRB indicated in *Hageman Under Ground Construction*, 253 NLRB No. 7 (1980) and *Precision Striping, Inc.*, 245 NLRB 34, *enf't denied* 642 F.2d 1144 (9th Cir.1981), a project-to-project construction employer is one that hires its workers on a project-to-project basis with little employee carry-over between projects. In support of its motion Vander Veen submitted affidavits of Jerry L. Vander Veen stating that Vander Veen Construction Company was engaged at all relevant periods in the construction industry and hired "substantially all of its employees" on a "project by project basis." Vander Veen hired these employees from the local area of each project and only for the duration of the project. (Vander Veen Affidavit, pars. 3, 4).

Based on Vander Veen's Request to Admit the Laborers are deemed to have admitted that Vander Veen was a project-to-project employer and that the Laborers had not achieved majority status at the site. However, the Carpenters contest both Vander Veen's project-to-project status and their own majority status at the project. In support the Carpenters submit an affidavit of James Glidden stating that Vander Veen used both local and stable unit employees as carpenters. The Carpenters do not specify the number or the percentage of local and stable unit employees that

worked at the Grand Haven project. Rather the Carpenters simply indicate in Glidden's affidavit that Vander Veen employed both local and stable unit employees at the project. In their brief the Carpenters argue that: "The case law is not clear what percentage of men must be local (non-stable) before an employer becomes project-by-project. What is clear is that we have a genuine issue of material fact if Defendant maintains that all of its men at Meijer # 18 were local." (Carpenters' Brief in Opposition to Motion for Summary Judgment at 7).

This Court acknowledges that the case law does not precisely define a project-to-project employer in terms of percentages. However, the case law does recognize that a project-to-project employer may "carry over" employees from one project to another. *Hageman Underground Construction*, 253 NLRB 7 (1980; *Precision Striping, Inc.*, 245 NLRB 34, *enf't denied* 642 F.2d 1144 (9th Cir.1981). Thus, the mere existence of a limited stable unit of employees does not preclude an employer from being a project-to-project employer. Accordingly, whether or not Vander Veen maintains that "all of its men" at the project were local is not a *material* issue of fact.

The Vander Veen deposition states that Vander Veen Construction hired "substantially all of its employees for its construction work on a 'project by project basis.'" The Glidden deposition merely states that Vander Veen Construction employed "local carpenters, who may have been employed only for that project, and by other carpenters who remained with Vander Veen for an extended period of time (not just for one project)." (Glidden Deposition, par. 9). The Glidden deposition does not contradict Vander Veen's assertion that Vander Veen Construction hired "substantially all of its employees" on a project-to-project basis. It does not detail the numbers or percentages of project-to-project employees and stable unit employees and, therefore, is insufficient to raise a genuine issue of material fact as to Vander Veen Construction's status as a project-to-project employer.

Moreover, the union's majority status at the Grand Haven project does not present a genuine issue of material fact. The Carpenters admit that four out of six carpenters on the Grand Haven project were not union members. (Plaintiff Carpenters' Responses to Defendant's Request for Admission, par. 9). Further, the Carpenters admit that under the collective bargaining agreement: (1) Vander Veen did not owe contributions to the funds for one (James Glidden) of the two carpenters that it claims were members because he was not employed as a carpenter on the project, and (2) Vander Veen only partially owed contributions on the other carpenter (James Fix) because he was promoted from a carpenter to an assistant superintendent during the project.

For purposes of this summary judgment motion this Court finds that no genuine issue of material fact exists as to Vander Veen Construction's status as a project-to-project employer and as to the nonmajority status of the Carpenters union at the Grand Haven project. Further, as a matter of law this Court determines that Vander Veen as a project-to-project employer repudiated all applicable prehire agreements that it had with the Laborers and Carpenters unions as to the Grand Haven project only and is not liable for contribution based on any prehire agreement.

*Employer Registration Form*

■ The Laborers also base their claim for contributions for work performed at the Grand Haven project on an Employer Registration form. The form is an agreement between Vander Veen Construction and the fringe benefit funds, not the unions, in which Vander Veen obligates itself to make contributions to the funds. Since the agreement is between the funds and an employer and not between a union and an employer, the agreement cannot, by definition, be a prehire agreement, which exists between a union and an employer. However, this particular Employer Registration form references collective bargaining agreements between the Laborers and Vander Veen Construction as the basis for Vander Veen's contributions to the funds.

As analyzed above and as the Laborers are deemed to have admitted, the Vander Veen–Laborers agreement was a prehire agreement, Vander Veen was a project-to-project employer, and the Laborers did not achieve majority status at the Grand Haven project. Accordingly, by its July 13, 1984, letter addressed to both unions and funds, Vander Veen repudiated any collective bargaining agreement referenced in this Employer Registration form as to the Grand Haven project. Since the agreement between Vander Veen and the Laborers was terminated, so was Vander Veen's obligation to the affiliated fringe benefit funds. Further, the Laborers' argument that Vander Veen remained obligated under the Employer Registration form because Vander Veen did not comply with the forms nonrenewal provision does not apply in the context of a prehire agreement. As the court in *Painters District Council No. 3 Pension Fund v. Johnson,* 566 F.Supp. 592, 598 (W.D.Mo.1983) noted:

> Freedom to void prehire agreements by notifying the other party of an intent to do so is an essential part of national labor policy. Plaintiffs' [benefit funds] and the union's effort to drastically limit by contract an employer's right repudiate prehire agreements is unenforceable. An employer's right to repudiate a prehire agreement is meaningless if an employer can be foreclosed by contract for a period of years from terminating at all as was attempted here.

*Expired Collective Bargaining Agreements*

Defendant Vander Veen also moves for summary judgment on plaintiffs' claims for contributions for periods when the parties' collective bargaining agreement had expired. Vander Veen argues that the consent agreements state that they shall not be effective upon termination or expiration of the master collective bargaining agreements. Vander Veen also argues that under *Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), a federal district court lacks jurisdiction over claims for contributions during periods while a collective bargaining agreement is lapsed; jurisdiction, rather, properly belongs to the NLRB. However, Vander Veen supplies no dates as to when the collective bargaining agreements expired. Moreover, plaintiffs note that the applicable collective bargaining agreements had roll-over provisions by which successive agreements were continuously operative with no gap in coverage. Further, it appears that Vander Veen continued to contribute to the funds on other projects. Vander Veen has not indicated when it stopped making such payments on other projects due to the expiration of the master agreements.

This Court lacks sufficient information on which to decide this aspect of Vander Veen's motion for summary judgment. Vander Veen has failed to adequately identify to this Court the issues over which no genuine dispute of material fact exists. Accordingly, this Court denies Vander Veen's motion for summary judgment as to issue of contributions owing for periods after which the agreements allegedly expired.

CONCLUSION

This Court grants Vander Veen's motion for summary judgment as to Plaintiffs' claims for contributions for work at the Grand Haven project after Vander Veen repudiated the prehire agreements. This Court denies Vander Veen's motion for summary judgment as to plaintiffs' claims for contributions under agreements that Vander Veen claims have expired.