**NEW MEXICO DISTRICT COUNCIL OF CARPENTERS AND JOINERS OF AMERICA, Plaintiff-Appellee,**

**v.**

**JORDAN & NOBLES CONSTRUCTION COMPANY, Defendant-Appellant.**

No. 85–1952.

United States Court of Appeals, Tenth Circuit.

Oct. 3, 1986.

John L. Hollis (Gerald R. Bloomfield, also of Kool, Kool, Bloomfield & Hollis, Albuquerque, N.M., on the brief), for defendant-appellant.

Michael D. McQueen (Charles C. High, Jr., and Christopher J. Powers, also of Kemp, Smith, Duncan & Hammond, El Paso, Tex., with him, on the briefs), for plaintiff-appellee.

Before LOGAN and ANDERSON, Circuit Judges, and BOHANON, District Judge.*

LOGAN, Circuit Judge.

This appeal concerns whether a labor agreement between the plaintiff-appellee, the New Mexico District Council of Carpenters (the Union), and the defendant-appel-

lant, Jordan & Nobles Construction Co., Inc., should be characterized as a voidable prehire agreement or a nonvoidable collective bargaining agreement.

Commencing in 1969, the Union and Jordan & Nobles entered into a series of labor agreements requiring the hiring of union carpenters on New Mexico construction sites. The last agreement, which is the one involved in this appeal, covered the period from June 20, 1978, through April 1, 1984. Jordan & Nobles abided by the terms of the 1978 agreement through January 1980, hiring union carpenters on three construction projects in New Mexico. Then, in January 1984, after four years without hiring in New Mexico, it began construction on an addition to a hospital in Alamogordo, New Mexico.

In early January 1984 when Jordan & Nobles "was just setting up and getting ready to go," R. IV, 43, Alfonso Murillo, the business agent for the Union, visited the hospital job site and was told by James Acosta, Jordan & Noble's project superintendent, that the company was not going to abide by the agreement. On February 10, 1984, Jordan & Nobles sent the Union a letter which said in part: "[W]e repudiate the Agreement and will not recognize your union as the representative of our employees on any of our projects in New Mexico." R. III, Def. Exh. A.

The Union responded by invoking a grievance procedure, outlined in Article VIII of the 1978 agreement, and claimed that Jordan & Nobles was in violation of the agreement. The Union-appointed members of the Joint Administrative Committee held a hearing on the grievance, found in favor of the Union, and assessed damages of $17,949.24 for unpaid wages, fringe benefit contributions, union fees and dues. Jordan & Nobles maintained that it was not bound by the agreement or its grievance procedure, and its representatives refused to participate in the hearing.

---

* The Honorable Luther L. Bohanon, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

The Union then filed suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the Committee's awards for breach of the agreement. After a bench trial, the district court found for the Union. On this appeal, Jordan & Nobles' primary contention is that the trial court erred as a matter of law in concluding that "[t]he collective bargaining agreement of June 20, 1978, was not a section 8(f), 29 U.S.C. § 158(f), prehire agreement." R. I, 99.

■ Section 8(f) allows an employer "engaged primarily in the building and construction industry" to enter into a labor agreement with a union even if "the majority status of such labor organization has not been established." 29 U.S.C. § 158(f). Section 8(f) agreements "are usually called 'pre-hire' agreements, although they need not be negotiated before a construction employer hires his work force." *Orange Belt District Council of Painters No. 48 v. Kashak*, 774 F.2d 985, 988 (9th Cir.1985). Employers may unilaterally repudiate a section 8(f) agreement "until and unless [the union] attains majority support in the relevant unit." *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 269, 103 S.Ct. 1753, 1758, 75 L.Ed.2d 830 (1983) (quoting *NLRB v. Local Union No. 103, International Association of Bridge, Structural & Ornamental Iron Workers (Higdon)*, 434 U.S. 335, 341, 98 S.Ct. 651, 655–56, 54 L.Ed.2d 586 (1978)); *Painters Local Union No. 164 v. Epley*, 764 F.2d 1509, 1513–14 (11th Cir.1985) ("the employer retains the right to repudiate the prehire contract at any time except where the union has established majority status at a particular project ..."), *cert. denied*, —— U.S. ——, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). If majority support is shown, the voidable § 8(f) agreement ripens "into a fully-binding, mature collective bargaining agreement." *Kashak*, 774 F.2d at 988.

■ Central to the issue of voidability is determining the relevant bargaining unit by which to evaluate the existence of majority support. If the employer has a "permanent and stable work force," then a showing of majority support among these employees on past projects is sufficient to convert a § 8(f) agreement into a collective bargaining agreement. *NLRB v. Haberman Construction Co.*, 641 F.2d 351, 367 (5th Cir.1981). If, however, the employer hires on a project-by-project basis, the relevant bargaining unit becomes the workers on each project and the union must "reestablish its majority at each successive jobsite." *Contractors, Laborers, Teamsters & Engineers Pension Plan v. F & H Construction Co.*, 787 F.2d 430, 431 (8th Cir. 1986) (quoting *Haberman*, 641 F.2d at 368). In *Higdon* the Supreme Court said:

> "The employer's duty to bargain and honor the contract is contingent on the union's attaining majority support at the various construction sites. In *NLRB v. Irvin*, 475 F.2d 1265 (CA3 1973), for example, the prehire contract was deemed binding on those projects at which the union had secured a majority but not with respect to those projects not yet begun before the union had terminated the contract."

434 U.S. at 345–46, 98 S.Ct. at 658. By definition, if a project-by-project employer repudiates an agreement before hiring on a project, the union cannot make a showing of majority support and the agreement is properly voidable with respect to that project.

The Union does not dispute that Jordan & Nobles was a project-by-project employer. In the three construction projects undertaken between 1978 and 1980, only two of thirty-nine employees were employed on more than one project and one of the two was hired after a four-month time gap. Moreover, for four years before the repudiation Jordan & Nobles did not hire any carpenters in New Mexico. Thus, Jordan & Nobles did not employ either a permanent or stable work force.

■ We need then only address whether Jordan & Nobles effectively repudiated the agreement before majority status was achieved at the hospital project. "In order to constitute a repudiation, the conduct must be sufficient to put the union and the employees on notice that the agreement is

terminated." *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Co.*, 733 F.2d 1321, 1326 (8th Cir. 1984). In the present case the trial court specifically found that "Mr. Acosta, as Defendant's Superintendent on the project, had both actual and apparent authority to inform Mr. Murillo that Defendant was not going to follow the terms of the collective bargaining agreement." R. I, 97. Acosta's statement was sufficient to give notice of Jordan & Nobles' repudiation. The Union's own witness indicated that "[t]here weren't really any carpenters on the job site," R. IV, 43, at the time Acosta in "very plain language" repudiated the agreement. R. IV, 71. The evidence is uncontroverted that this notice of repudiation came before any carpenters were hired.[1]

■ A union cannot show majority support in a work force that is yet to be hired. We therefore find as a matter of law that a project-by-project employer may void a § 8(f) agreement with respect to any project in which hiring has not taken place. Thus, Jordan & Nobles' repudiation of the agreement was proper.[2]

The district court's decision is RE-VERSED.

---

**1.** Because we find that Acosta's statement in early January was sufficient repudiation, we need not consider the union affiliation of carpenters employed before the February 10 letter from Jordan & Nobles to the Union, or whether these carpenters constituted a representative complement of those carpenters that were eventually hired.

**2.** We do not reach Jordan & Nobles' alternative claim that the 1978 agreement was converted to a project-only agreement by operation of its "Most Favored Nations" clause when the Union signed single project agreements with other employers.