**TRUSTEES FOR ALASKA LABORERS–CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND; Alaska Laborers-Employers' Retirement Fund; Alaska Laborers-Construction Industry Training Fund; Alaska Laborers-Construction Industry Legal Services Fund, Plaintiffs-Appellees,**

v.

**Charles FERRELL and Costella Ferrell, d/b/a Chuck's Backhoe Service, Defendants-Appellants.**

**Charles FERRELL and Costella Ferrell, d/b/a Chuck's Backhoe Service, Counter-Claimants,**

v.

**GENERAL LABORERS' UNION AFL–CIO, LOCAL UNION 341; Trustees For Alaska Laborers-Construction Industry Health and Security Fund; Alaska Laborers-Employers' Retirement Fund; Alaska Laborers-Construction Industry Training Fund; Alaska Laborers-Construction Industry Legal Services Funds, Counter-Defendants.**

No. 85–4417.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 5, 1987 *.

Decided March 10, 1987.

* The panel granted the parties' Stipulation for Submission Without Oral Argument and submitted the cause on its briefs and record on January 5, 1987.

Erin B. Marston, Anchorage, Alaska, for defendants-appellants.

Bradley D. Owens, Anchorage, Alaska, for plaintiffs-appellees.

Before WRIGHT, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

The Trustees for Alaska Laborer Fund (Trustees) seek to recover unpaid contributions allegedly required under a compliance agreement signed by the appellant, Ferrell, while he was a partner in a joint venture agreement. Jurisdiction is predicated on section 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132.

Ferrell signed the compliance agreement in 1972 while he was a partner in a joint venture known as Chuck's Backhoe Service (CBS). In 1974 the joint venture was terminated. Ferrell continued to do business under the name Chuck's Backhoe Service as a sole proprietor. When Ferrell left the joint venture, he ceased filing monthly remittance forms and contributing to the plan. However, he never notified the Trustees that he intended to terminate the agreement, as was required under the compliance agreement.

The Trustees filed suit in 1982, seeking unpaid contributions for 1978 through 1982. The district court concluded that Ferrell was a successor employer to the joint venture and as such was bound by the agreement. The district court further ruled that the Trustees' cause of action was timely. On November 21, 1985, the court entered judgment in favor of the Trustees in the amount of $63,243.64. The judgment in favor of the Trustees is appealable pursuant to Fed.R.Civ.P. 54(b). We affirm.

## I

### FACTS

Ferrell has operated under the name Chuck's Backhoe Service since 1970. In

1971, he formed a joint venture with Colin Kelly. Kelly owned 80 percent of CBS while Ferrell owned 20 percent. The joint venture engaged in the construction of multi-family homes, high schools and other public buildings. During the existence of the joint venture Ferrell rented office space from Kelly for $1,000 per month.

In 1972, Ferrell and Kelly signed the compliance agreement on behalf of CBS. The agreement required the joint venture to make contributions to the Trust for hours worked by covered union and non-union employees.

In 1974, after the termination of the joint venture, Ferrell resumed operations as a sole proprietor. His work force was composed primarily of former joint venture employees. Ferrell retained possession of the equipment that he had brought into the joint venture. Additionally, he purchased two backhoes from Kelly which the joint venture had acquired. After he left the joint venture Ferrell leased new office space. Since 1974 he has engaged exclusively in excavation operations.

While operating as a sole proprietor, Ferrell employed one union worker for a brief time in 1978. Ferrell made contributions to the Trust on behalf of this employee. Between 1974 and 1982, this was the only occasion on which Ferrell contributed to the plan.

## II

## ANALYSIS

Ferrell contends he is not a successor employer to the joint venture and, accordingly, not bound by the compliance agreement. Alternatively, Ferrell claims that if he is viewed as a successor employer, the Trustees' cause of action is time-barred by the relevant statute of limitations or laches.

The district court's grant of summary judgment is reviewed de novo. We must determine if, viewing the evidence in the light most favorable to Ferrell, there are any genuine issues of material fact and if the district court applied the relevant substantive law correctly. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986).

### A. Successor Employer

In *Kallmann v. NLRB,* 640 F.2d 1094 (9th Cir.1981), we devised a two-part test for determining if an employer is a successor. Under the analysis articulated in *Kallmann* a company is deemed a successor if it hires most of its employees from the predecessor employer's work force and if it conducts essentially the same business as the predecessor. *Kallmann,* 640 F.2d at 1100. A successor employer may be bound by agreements entered into by the predecessor, including agreements to contribute to pension funds. *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 763–64 (9th Cir.1981). The successor employer is contractually obligated because a mere change in ownership, without an essential change in working conditions, should not operate to deprive employees of benefits achieved through collective action. *NLRB v. Jeffries Lithograph Co.,* 752 F.2d 459, 463 (9th Cir.1985); *see also Howard Johnson Co. v. Hotel Employees,* 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974).

In *NLRB v. Jeffries Lithograph Co.,* 752 F.2d 459 (9th Cir.1985), we elaborated extensively on the successorship doctrine of *Kallmann.* To determine if an employer is engaged in essentially the same business as a predecessor, *Jeffries Lithograph* instructs us to consider various factors, including whether:

[a] there has been a substantial continuity of the same business operations; [b] the new employer uses the same plant; [c] the same or substantially the same work force is employed; [d] the same jobs exist under the same working conditions; [e] the same supervisors are employed; [f] the same machinery, equipment, and methods of production are used; and [g] the same product is manufactured or the same service [is] offered.

*NLRB v. Jeffries Lithograph Co.,* 752 F.2d at 463 (quoting *Premium Foods, Inc.,* 260 N.L.R.B. 708, 714 (1982), *enforced,* 709 F.2d 623 (9th Cir.1983)). Employing the

analysis articulated in *Jeffries Lithograph,* we conclude that Ferrell is a successor employer. In support of our conclusion we note that during the joint venture Ferrell provided backhoe service for projects in which his partner, Kelly, was the general contractor. After terminating his agreement with Kelly, Ferrell continued to provide backhoe services under the name Chuck's Backhoe Service. When Ferrell left the joint venture, he maintained in his employ many of the same employees he brought with him into the joint venture.[1] Ferrell's new company retained possession of the equipment he brought into the joint venture. Ferrell also purchased equipment from Kelly that was acquired by the joint venture. These factors all weigh in favor of finding that the sole proprietorship was engaged in essentially the same business as the joint venture. Ferrell notes that he established new offices after leaving the joint venture. He also contends that the joint venture engaged in large-scale construction projects while his sole proprietorship is engaged in smaller excavation operations. These factors are relevant under *Jeffries Lithograph.* Nevertheless, on balance, the evidence indicates that Ferrell is a successor. In *Audit Services, Inc. v. Rolfson,* 641 F.2d 757 (9th Cir.1981), we held that "[t]he single most important factor here is that Rolfson Construction employed substantially the same work force as Rolfson Company. Continuity of work force is a major consideration in successorship cases." *Rolfson,* 641 F.2d 763. We agree that continuity of work force is a major consideration. Here, Ferrell admits that the vast majority of his employees came from the joint venture. This factor, in conjunction with the other factors mentioned above, is sufficient to support the district court's finding that Ferrell is a successor employer.

**B. Statute of Limitations**

The Trustees brought this action pursuant to 29 U.S.C. § 1132. This provision contains no statute of limitations. Ferrell requests that we employ the six-month statute of limitations adopted by the Supreme Court in *Del Costello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Trustees argue for the application of Alaska's six-year statute of limitations for actions sounding in contract. The district court relied on a limitations provision contained in a section of ERISA governing multi-employer pension plans. We address Ferrell's argument first.

■ In *Del Costello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that "hybrid" claims brought by an employee against an employer and a union are governed by the six-month statute of limitations for unfair labor practice claims in 29 U.S.C. § 160(b). A hybrid claim contains an allegation that the employer breached a provision of a collective bargaining agreement and an allegation that the union breached its duty of fair representation by mishandling grievance proceedings. In *Del Costello* the Court applied six-month statute of limitations for unfair labor practice claims after concluding that the hybrid claim "has no close analogy in ordinary state law." *Del Costello,* 462 U.S. at 165, 103 S.Ct. at 2291.

The *Del Costello* Court expressly approved its earlier holding in *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) ("*Hoosier*"). According to the Court, *Hoosier,* unlike *Del Costello,* involved a straightforward claim for breach of a collective bargaining agreement under section 301 of LMRA. *Del Costello,* 462 U.S. at 162, 103 S.Ct. at 2289. In *Hoosier,* the Court held that the plaintiff's claim was governed by Indiana's six-year limitation period for contract actions, noting that "[s]uch an action closely resembles an action for breach of contract cognizable at common law." *Hoo-*

---

1. As previously stated, under *Kallmann v. NLRB,* 640 F.2d 1094 (9th Cir.1980), we must also determine if the majority of Ferrell's present work force are former employees of the joint venture. Ferrell concedes this point. Thus, if we conclude that Ferrell is engaged in essentially the same business as the joint venture, we must also conclude he is a successor employer.

*sier,* 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7.

■ The Trustees' claim can only be characterized as a straightforward breach of contract claim. The Trustees allege that Ferrell, as a successor employer, is bound by the compliance agreement which he breached by failing to make the required contributions. Accordingly, under the reasoning of *Del Costello* and *Hoosier,* we apply the Alaska limitations period governing contract actions.[2] We note that our holding is consistent with those of other courts which have considered this issue. *See O'Hare v. General Marine Transp.,* 740 F.2d 160, 167–68 (2d Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); *Dameron v. Sinai Hosp.,* 595 F.Supp. 1404, 1413 (D.Md.1984).[3]

The district court applied the six-year statute of limitations in 29 U.S.C. § 1451(f). While we conclude that this was error, we find no occasion to reverse, as the error was harmless.[4] As previously stated, the Trustees brought their claim under 29 U.S.C. § 1132, a general jurisdiction provision which authorizes civil actions for participants or beneficiaries in ERISA funds to recover benefits due under a plan. Despite the Trustees' reliance on section 1132, the district court employed the six year statute of limitations found in 29 U.S.C. § 1451(f).

■ The district court's reliance on the limitation provision in 29 U.S.C. § 1451 was inappropriate. This section provides a cause of action for pension plan trustees to collect withdrawal liability from employers who have withdrawn from a multiemployer pension plan. Here, the Trustees contend that Ferrell never withdrew from the plan. Instead, they argue that when the joint venture ceased to exist, it was replaced by Ferrell's sole proprietorship, which had a continuing obligation under the compliance agreement. When a successor employer assumes the obligations of its predecessor,

no withdrawal occurs and reliance on section 1451 is inappropriate. H.R.Rep. No. 869, 96th Cong., 2d Sess. 73–74, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2942. The appropriate course of action, which the Trustees pursued, is an action under section 1132 to recover unpaid contributions. Because section 1132 provides no statute of limitations, we look to state law for the relevant limitations period.

**C. Accrual of the Trustees' Cause of Action**

■ The compliance agreement required Ferrell to make contributions on a monthly basis. This type of contract, which is analogous to an installment contract, requires continuing performance. The contract is capable of a series of partial breaches or a single total breach by repudiation. 4 A. Corbin, *Corbin on Contracts* § 956 (1951). Absent a repudiation of a contract that requires continuing performance, the plaintiff may only sue for partial breaches as they occur, and the statute of limitations does not begin to run against a subsequent failure to perform until it occurs. 4 A. Corbin, *Corbin on Contracts* § 951 (1951). Thus, a failure to make monthly payments in a contract which requires continuing performance results in a new breach every month. The limitations period runs against each monthly right of action separately. 4 A. Corbin, *Corbin on Contracts* § 989 (1951).

■ Ferrell failed to inform the Trustees that he did not intend to perform under the compliance agreement. Thus, Ferrell is precluded from asserting he expressly repudiated the contract. Nevertheless, we recently recognized that an employer can repudiate a contract by engaging in conduct so overtly inconsistent with contractual obligations that the union is

---

**2.** Alaska Stat. § 9.10.050 states: No person may bring an action (1) upon a contract or liability, express or implied … unless commenced within six years.

**3.** *Cf. Byrnes v. Debolt Transfer, Inc.,* 741 F.2d 620, 625 (3d Cir.1984) (applying state limitation

provision from State Wage Payment and Collection Code).

**4.** Both the Alaska statute and the provision relied on by the district court provide a six-year statute of limitations.

deemed to be on notice of the employer's intent to repudiate. *Carpenters S. California Admin. Corp. v. J.L.M. Constr. Co.*, 809 F.2d 594 (9th Cir.1987) ("*J.L.M. Constr. Co.*"). Ferrell asserts that he repudiated the compliance agreement by his conduct. His argument is unpersuasive. It is well-settled in jurisdictions that recognize repudiation by conduct that mere noncompliance with contractual obligations does not constitute an effective repudiation. *Int'l Ass'n of Bridgeworkers Local No. 103 v. Higdon Constr. Co.*, 739 F.2d 280, 282–83 (7th Cir.1984); *Contractors, Laborers, Teamsters & Eng'rs Health and Welfare Plan v. Harkins Constr. & Equip. Co.*, 733 F.2d 1321, 1326 (8th Cir. 1984). Here, there is no evidence of conduct by Ferrell that rises above mere noncompliance with contractual obligations. *Compare with J.L.M. Constr. Co.*, 809 F.2d at 597, 599 (9th Cir.1987) (employer notified union that it considered itself no longer bound by the agreement on several occasions and engaged in other conduct which clearly notified union that the company wished to terminate the agreement). In fact, Ferrell performed his obligations under the compliance agreement on one occasion. We hold, therefore, that Ferrell failed to repudiate the compliance agreement by his conduct.

Accordingly, each time Ferrell failed to make payments under the plan, a new breach occurred with a separate limitations period. The Trustees filed suit in October 1982. Under Alaska's six-year statute of limitations their claim was timely for every monthly breach which occurred between October 1976 and October 1982. Thus, the Trustees' claim is timely.

Finally, we reject Ferrell's laches defense. To successfully invoke the defense of laches, an individual must show there was inexcusable delay in the assertion of a known right and that the party asserting laches has been prejudiced. *People of the Village of Gambell v. Hodel*, 774 F.2d 1414, 1427 (9th Cir.1985), *cert. grant-*

ed, — U.S. ——, 106 S.Ct. 2274, 90 L.Ed.2d 717 (1986). Ferrell is unable to demonstrate the existence of prejudice. Here, Ferrell merely alleges that "had [he] possessed knowledge that he had violated an alleged contract he would have been in a position to rectify any contractual discrepancies and minimize damages." This unsupported allegation is insufficient. Ferrell has not indicated how he would have minimized his liability. Moreover, he has failed to identify any "contractual discrepancies." Traditionally, laches is invoked when witnesses have died or evidence has gone stale. Ferrell has not been prejudiced in this manner.

The judgment of the district court is AFFIRMED.