850 F.2d 613
 109 Lab.Cas. P 10,572
 The TRUSTEES OF the WYOMING LABORERS HEALTH AND WELFARE
PLAN, an express trust; the Trustees of the Oregon
Laborers-Employers Vacation Savings Trust Fund, an express
trust; the Trustees of the Oregon Southwestern Washington
Laborers Training Trust Fund, an express trust; the
Laborers National Pension Fund; and Ann Sizemore, in her
capacity as Administrator, Plaintiffs- Appellants Cross-Appellees
v.
MORGEN & OSWOOD CONSTRUCTION COMPANY, INC. OF WYOMING, a
Wyoming corporation, Defendant-Appellee Cross-Appellant.
 Nos. 86-1488, 86-1489.
 United States Court of Appeals,
Tenth Circuit.
 June 24, 1988.
 
 David Evans of Rooney, Bagley, Hickey, Evans & Statkus, Cheyenne, Wyo., for plaintiffs-appellants cross-appellees.
 Leslie S. Waite, III, of Waite, Schuster & Larson, P.C., Great Falls, Mont., for defendant-appellee cross-appellant.
 Before HOLLOWAY, Chief Judge, TACHA, Circuit Judge, and BRATTON, District Judge.*
 BRATTON, District Judge.
 This is an appeal and cross-appeal from a judgment entered by the district court in favor of trustees of employee benefit pension and insurance funds and assessing damages against an employer for delinquent contributions. The district court held that the employer owed a portion of the delinquent contributions claimed by the trustees, and awarded $11,461.27 for unpaid contributions, a double interest penalty on that amount, auditor's fees, attorney's fees and costs against the employer. The trustees and the employer appeal from that judgment.
 Morgen & Oswood Construction Co., Inc. ("Morgen & Oswood") is a Wyoming corporation that was engaged as an employer in construction operations in Wyoming during all relevant periods. Morgen & Oswood employed laborers, carpenters and other construction workers; these workers were normally employed at the commencement of a project and their employment was terminated when the project concluded. Morgen & Oswood did not have a permanent, year-round construction work force.
 The Trustees are various multi-employer trust funds which provide medical and hospital insurance, vocational training, vacation pay and retirement benefits for employees who are laborers in the construction industry in Wyoming and Oregon. The trust funds were established pursuant to the Labor Management Relations Act, 29 U.S.C. Sec. 186(c). The Trustees filed this action as "fiduciaries" to enforce the terms of the trust agreements under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1132(a)(3)(B)(ii) (1982), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Sec. 1145 (1982).[1]
 From February 22, 1979 through June 30, 1979, Morgen & Oswood and the Oregon, Southern Idaho, and Wyoming District Council of Laborers and Construction and General Laborers Local 1271 ("the Union") were parties to a "pre-hire agreement"[2] that pertained to a collective bargaining agreement negotiated by the Union and the Wyoming Contractors Association, Inc. The contract bound Morgen & Oswood to the provisions of the collective bargaining agreement until June 30, 1979.[3] The collective bargaining agreement, in turn, bound Morgen & Oswood to the terms of the Trustees' trust agreements, which had been incorporated by reference into the collective bargaining agreement. The trust agreements required Morgen & Oswood to make fringe benefit payments to the trust funds based on a specified sum per hour for every employee performing work covered by the Union contract.
 On March 26, 1979, Morgen & Oswood notified the Union by letter of its intent to terminate the agreement pursuant to the terms of the collective bargaining agreement, which allowed an employer to opt out of any successor collective bargaining agreements if it gave the Union written notice sixty days prior to the termination date of June 30, 1979. The parties agree that this agreement was no longer in effect after June 30, 1979.
 Douglas Oswood, the president of Morgen & Oswood, signed another "Laborer's Compliance Agreement" on August 8, 1979. This contract contained a notation that the pre-hire agreement was to apply only to the Sheridan Heritage Towers project. Two copies of the pre-hire agreement had been sent by the Union to Morgen & Oswood. One agreement was signed on behalf of the Union, and Morgen & Oswood was to sign both copies and retain the copy signed by the Union; the other copy was to be returned to the Union. On August 9, 1979, a representative of the Union visited Morgen & Oswood's construction site in Sheridan, Wyoming, to pick up the agreement. The Union representative informed Gary Harwood, Morgen & Oswood's project superintendent, that the Heritage Towers limitation would be unacceptable to the Union. Harwood apparently received telephone authorization to initial the deletion of the notation. The notation was marked out in black ink and the Union representative initialed this change. The Union representative delivered the marked copy of the agreement to the Union agent; the agreement was then forwarded to the Local in Cheyenne, Wyoming, where it was signed. Morgen & Oswood claimed that it never obtained a copy of the agreement signed by the Union until April 24, 1984.
 Morgen & Oswood did not sign a new "Standard Form of Participation Agreement" with the pension fund Trustees. This agreement usually becomes part of the labor agreement and specifies the effective and termination dates, as well as the employer's pension responsibilities. It was the Union's general practice to send copies of all labor agreements to employers.[4]
 At trial, Douglas Oswood testified on behalf of Morgen & Oswood. He stated that he intended and understood that the agreement would apply only to the Sheridan Heritage Towers project and the Yellowstone Park Mammoth Hot Springs project. Morgen & Oswood made fringe benefit contributions to the trust funds for the covered employees on both of these projects. Morgen & Oswood also operated eleven other projects in Wyoming during this time period, but made no fringe benefit contributions for these projects. The Union did not represent a majority of the employees at any of the projects, but had notice that these projects were in progress.
 A Union representative visited several of Morgen & Oswood's job sites in the summer of 1981 and later in the year. He was told that Morgen & Oswood was not hiring union help on these jobs because Morgen & Oswood considered the jobs to be non-union and that it was not bound by any Union agreement pertaining to these jobs. Morgen & Oswood also informed subcontractors that the jobs were non-union. As a result, the Union was of the opinion that a serious labor problem existed, because the Union took the position that Morgen & Oswood was not complying with an existing contract. On December 29, 1981, Douglas Oswood wrote to the Union and denied that Morgen & Oswood was bound by any collective bargaining agreement. On February 25, 1982, the Union responded, informing Morgen & Oswood that a labor agreement dated August 8, 1979, signed by Morgen & Oswood, was still in effect and would remain in effect until June 30, 1982. Despite two requests by Douglas Oswood, the Union failed to send copies of any agreements to Morgen & Oswood.
 Although the Union's normal practice was to notify the Trustees of non-compliance by employers, the Union failed to notify the Trustees concerning Morgen & Oswood's failure to make required contributions for the eleven projects. On September 30, 1982, the Trustees wrote to Morgen & Oswood, stating that no reports or contributions had been received for April, 1982 through July, 1982. On October 13, 1982, Morgen & Oswood informed the Trustees that it was no longer responsible for any pension fund contributions. By letter dated September 2, 1983, the Trustees' accountant requested an audit for the period of February 1, 1979 through June 30, 1982. An audit was subsequently conducted; although Morgen & Oswood reserved its defenses, the specific computations of that audit are not in dispute.
 The case was tried to the district court on August 21 and 22, 1985. The district court found that Morgen & Oswood entered into a contract with the Union on August 9, 1979. The court determined, however, that Morgen & Oswood had repudiated the agreement by July 31, 1981. The court found, therefore, that Morgen & Oswood was bound to the collective bargaining agreements in existence during the period from August 9, 1979 through July 31, 1981. The court also found that the Trustees' suit was not barred by a statute of limitations and further found that the suit should not be estopped or barred by laches. On February 19, 1986, the district court entered judgment in favor of the Trustees in the amount of $32,163.92.[5]
 Both parties have appealed from the judgment entered by the district court. The Trustees agree that there was a binding contract in effect as of August 9, 1979, but argue that Morgen & Oswood did not repudiate that contract before December 29, 1981, when it gave written notice of its intent to terminate the agreement. Morgen & Oswood argues that there was no contract between the parties in August, 1979, but that if there was a contract, the district court was correct in finding that Morgen & Oswood repudiated the contract. Morgen & Oswood also argues that the Trustees' action was barred by either of two applicable statutes of limitation. Finally, Morgen & Oswood argues that the Trustees were negligent in asserting their claims, and that their action should be barred by the doctrines of estoppel and laches.
 I. Statute of Limitations
 The Trustees' Complaint was filed on October 2, 1984. Morgen & Oswood raised the defense that either of two applicable statutes of limitations barred recovery on at least three occasions: in its Answer, Vol. I, R. 11, at the Pretrial Conference, Vol. I, R. 17, and at trial, Vol. II, R. 13; Vol. III, R. 242. Morgen & Oswood contended that the six-month statute of limitations contained in the National Labor Relations Act, 29 U.S.C. Sec. 160(b), applied to bar the Trustees' action, relying on the reasoning in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Alternatively, Morgen & Oswood asserted that the Wyoming two-year statute of limitations for all actions based on liability created by federal statute, Wyo.Stat. Sec. 1-3-115 (1977), would bar the Trustees' action.[6] The Trustees argued that their action was timely filed, because the Wyoming ten-year statute of limitations for actions based on written contracts applied. Wyo.Stat. Sec. 1-3-105(a)(i) (1977). The district court rejected Morgen & Oswood's contention that the National Labor Relations Act's six-month statute of limitations barred the action by stating: "[T]his Court has previously declined to hold that a suit in this nature is barred by a six month statute of limitation." Vol. I, R. 52. The district court did not address Morgen & Oswood's alternative argument concerning the two-year Wyoming statute of limitations for federal causes of action. The district court's ruling on the applicability of a statute of limitations is, however, a question of law to be reviewed de novo. Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1328 (9th Cir.1987).
 The Trustees' claims were brought under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Secs. 1132(a)(3)(B)(ii) and 1145 (1982).[7] ERISA contains no statute of limitations applicable to a trustees' action to recover delinquent contributions from an employer.[8] "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). See also United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 703-04, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966); DelCostello, 462 U.S. at 158, 103 S.Ct. at 2287. The determination of which limitations period is the "most appropriate" or "most analogous", Wilson v. Garcia, 471 U.S. at 268, 105 S.Ct. at 1942, "depends upon an examination of the nature of the federal claim and the federal policies involved." United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 60-61, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981). Characterization of the nature of the claim for the purpose of determining the applicable statute of limitations is, therefore, a question of federal law. Wilson v. Garcia, 471 U.S. at 270, 105 S.Ct. at 1944; Hoosier Cardinal Corp., 383 U.S. at 706, 86 S.Ct. at 1113-14.
 Morgen & Oswood argues that the Trustees' claim that Morgen & Oswood breached the purported agreement is a claim of an unfair labor practice, and that the six-month statute of limitations contained in the National Labor Relations Act should be applied to bar the Trustees' action. Morgen & Oswood relies on DelCostello, in which the United States Supreme Court held that the six-month statute of limitations applied to a "hybrid" action in which an employee sued both his employer and his union because the union had undermined the grievance and arbitration process by violating its duty of fair representation of the employee. 462 U.S. at 170, 103 S.Ct. at 2293-94. The Court emphasized the uniquely "hybrid" nature of plaintiffs' claims, id. at 164-65, 103 S.Ct. at 2290-91, and the similarity of the rights asserted in such claims with the right to redress unfair labor practices actionable under the National Labor Relations Act. Id. at 170, 103 S.Ct. at 2293-94. Finally, the Court noted the similarity of interests to be balanced in choosing a limitations period:
 "The employee's interest in setting aside the 'final and binding' determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates 'those consensual processes that federal labor law is chiefly designed to promote--the formation of the ... agreement and the private settlement of disputes under it.' Hoosier, 383 U.S., at 702 [86 S.Ct. at 1111]."
 DelCostello, 462 U.S. at 171, 103 S.Ct. at 2294 (quoting United Parcel Service, Inc. v. Mitchell, 451 U.S. at 70-71, 101 S.Ct. at 1568 (Stevens, J., concurring in the judgment) (footnote omitted)).
 
 
 1
 The Supreme Court's holding in DelCostello does not, however, render the six-month statute of limitations applicable to all cases alleging conduct that might constitute an unfair labor practice. In Garcia v. Eidal International Corp., 808 F.2d 717 (10th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987), we rejected an employer's argument that the DelCostello holding applied to an action by former employees against their employer, the employer's successor and their union for breach of the employer's obligations under a collective bargaining agreement. In distinguishing that case from a "typical hybrid action," we stated:
 
 
 2
 An employer's repudiation of the grievance and arbitration process can also constitute an unfair labor practice within the jurisdiction of the NLRB. Such a violation, however, does not make the employer's conduct any less a breach of a collective bargaining agreement, which is actionable under Sec. 301.
 
 
 3
 Id. at 721. See also O'Hare v. General Marine Transport Corp., 740 F.2d 160, 168 (2d Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985) ("the DelCostello holding turns on the particular nature of the duty of fair representation action, and cannot reasonably be expanded to all section 301 claims that involve facts which might also have established an unfair labor practice charge"). In this case, the Trustees are not employees, and have not sued the relevant union for a breach of the duty of fair representation. The holding of DelCostello does not, therefore, render the six-month statute of limitations applicable to this case.
 
 
 4
 Furthermore, the policy considerations influencing the choice of a relatively brief statute of limitations in labor cases do not apply in this case. Rapid resolution of labor disputes may be desirable when the collective bargaining process is threatened because disputes between parties in collective bargaining can lead to strikes, lockouts, or other exercises of economic power. See Robbins v. Iowa Road Builders Company, 828 F.2d 1348, 1355 (8th Cir.1987), appeal pending, # 87-1498 (Feb. 23, 1988). The United States Supreme Court has recognized, however, that such economic power cannot be wielded in disputes between benefit fund trustees. National Labor Relations Board v. Amax Coal Co., 453 U.S. 322, 337, 101 S.Ct. 2789, 2798, 69 L.Ed.2d 672 (1981). More recently, the Court stated: "We think that the same observation applies to disputes between the trustees and the employer. Although the employer has economic weapons at its disposal, they would serve little purpose in disputes with the trustees of employee-benefit funds." Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 372 n. 13, 104 S.Ct. 1844, 1849 n. 13, 80 L.Ed.2d 366 (1984). Therefore, the policies favoring application of the brief six-month statute of limitations contained in the National Labor Relations Act are not implicated in this case.[9]
 
 
 5
 Alternatively, Morgen & Oswood argues that the Trustees' case is barred by the two-year Wyoming statute applicable to actions seeking to impose liability based on a federal statute, Wyo.Stat. Sec. 1-3-115 (1977). It is undeniable that the Trustees' Complaint seeks to impose liability based on a federal statute, ERISA, and the two-year statute would, therefore, appear to apply to this action. Nevertheless, a state statute of limitations will not be applied when it discriminates or expresses hostility against a federal cause of action. Wilson v. Garcia, 471 U.S. at 276, 105 S.Ct. at 1947; Hughes v. Sheriff of Fall River County Jail, 814 F.2d 532, 534 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 46, 98 L.Ed.2d 10 (1987). In this case, examination of the general Wyoming statutory scheme reveals the sort of hostility against a federal cause of action that renders the two-year statute of limitations inapplicable.
 
 
 6
 In addition to the two-year statute of limitations for actions based on federal statute, Wyoming has an eight-year statute of limitations for actions seeking to impose liability based on a state statute. Wyo.Stat. Sec. 1-3-105(a)(ii)(B) (1977).[10] There is also a general, ten-year "catch-all" statute for actions for relief "not hereinbefore provided for[.]" Wyo.Stat. Sec. 1-3-109 (1977).[11] Indeed, the only Wyoming statutes of limitations providing shorter periods of limitations apply to actions for libel or slander, assault or battery, malicious prosecution or false imprisonment, or upon a statute for a penalty or forfeiture. Wyo.Stat. Secs. 1-3-105(a)(v)(A)-(D) (1977). Therefore, although the two-year limitations period provided in Wyo.Stat. Sec. 1-3-115 is not necessarily hostile to a federal cause of action by virtue of the amount of time provided, a comparison of the amount of time provided for causes of action arising under state law with the amount of time provided for actions arising under federal law demonstrates the statute's hostility against federal causes of action and, therefore, its inapplicability in this case.[12] See Republic Pictures Corp. v. Kappler, 151 F.2d 543, 546 (8th Cir.1945), aff'd per curiam without opinion, 327 U.S. 757, 66 S.Ct. 523, 90 L.Ed. 991 (1946).
 
 
 7
 We agree with the Trustees' contention that the Wyoming ten-year statute of limitations for actions based on written contract is applicable in this case. Wyo.Stat. Sec. 1-3-105(a)(i) (1977). The Trustees' Complaint seeks to enforce the terms of the August, 1979 "Laborers Compliance Agreement," which obligated Morgen & Oswood as follows:
 
 
 8
 The undersigned employer agrees to be bound by and to make contributions to the applicable health and welfare trust fund, pension trust fund, training trust fund, vacation trust fund, dues check-off, and any other trust funds, as specified in said agreement, and does further agree to abide by all the terms and conditions of the trust agreements creating the respective trust funds and any amendments heretofore or hereafter adopted.
 
 
 9
 Brief of Appellants, Exhibit 7. Like most claims for delinquent contributions brought by trustees under ERISA, therefore, the Trustees' claim in this case can be characterized as a breach of contract claim. See Trustees for Alaska Laborers-Construction Industry Health and Security Fund v. Ferrell, 812 F.2d 512, 517 (9th Cir.1987).
 
 
 10
 In two cases brought under ERISA, the United States Supreme Court has recognized that the relationship between trustees and employers is founded on contract. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 565, 105 S.Ct. 2833, 2837-38, 86 L.Ed.2d 447 (1985); Schneider Moving & Storage v. Robbins, 466 U.S. 364, 368, 104 S.Ct. 1844, 1847, 80 L.Ed.2d 366 (1984). Furthermore, almost every court that has addressed a claim for delinquent contributions under ERISA has characterized that claim as a contract claim for purposes of determining an analogous statute of limitations. See Robbins v. Iowa Road Builders Company, 828 F.2d 1348, 1355 (8th Cir.1987), appeal pending, # 87-1498 (Feb. 23, 1988); Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1328 (9th Cir.1987); Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc., 823 F.2d 289, 298 (9th Cir.1987); Dameron v. Sinai Hospital of Baltimore, Inc., 815 F.2d 975, 981-82 (4th Cir.1987); Trustees for Alaska Laborers-Construction Industry Health and Security Fund v. Ferrell, 812 F.2d 512, 517 (9th Cir.1987); Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1106-07 (6th Cir.1986) (en banc), cert. denied, --- U.S. ----, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987); Trustees of Operative Plasterers' and Cement Masons' Local Union Officers and Employees Pension Fund v. Journeymen Plasterers' Protective and Benevolent Society, Local Union No. 5, 794 F.2d 1217, 1221 n. 5 (7th Cir.1986); Smith v. Kerrville Bus Company, Inc., 748 F.2d 1049, 1054 (5th Cir.1984); O'Hare v. General Marine Transport Corp., 740 F.2d 160, 167-68 (2d Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); Jenkins v. Local 705 International Brotherhood of Teamsters Pension Plan, 713 F.2d 247, 253 (7th Cir.1983); Trustees of the Operating Engineers Pension Trust v. O'Dell, 682 F.Supp. 1506, 1516 (D.Nev.1988); Carpenters Local Union No. 1846 of the United Brotherhood of Carpenters and Joiners of America v. Pratt-Farnsworth, Inc., 609 F.Supp. 1302, 1305-06 (E.D.La.1984); Haynes v. O'Connell, 599 F.Supp. 59, 62 (E.D.Tenn.1984); Cowden v. Montgomery County Society for Cancer Control, 591 F.Supp. 740, 754-55 (S.D.Ohio 1984); Nolan v. Aetna Life Insurance Co., 588 F.Supp. 1375, 1379 (E.D.Mich.1984). But see Teamsters Pension Trust Fund of Philadelphia and Vicinity v. John Tinney Delivery Service, Inc., 732 F.2d 319, 322-23 (3rd Cir.1984) (application of three-year statute of limitations contained in Pennsylvania's Wage Payment and Collection law, rather than six-year statute of limitations for actions based on written contracts to trustees' suit to recover delinquent employee benefit contributions).
 
 
 11
 Finally, characterization of an ERISA action as an action on contract is consistent with the legislative history of that statute and recognizes the similarity of actions under ERISA to actions brought under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1982). The legislative history of ERISA demonstrates that Congress was cognizant of the contractual basis for the statute's obligations. See, e.g., H.R.Rep. No. 807, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4754 ("This provision is intended to adapt the minimum funding standard to those plans where contributions are fixed by contract in accordance with a fixed standard[.]"); id. at 4754-55 ("[I]t is intended that experience gains and losses generally are to be determined at the end of each contract period[.]"); id. at 4755 ("[I]t is understood that some multiemployer, collectively bargained plans are based on a number of contracts, each expiring at different times."); id. at 4764 ("Generally, the 'plan year' for a collectively bargained plan will be the contract period."); S.Rep. No. 127, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4838, 4841-42 ("In almost every instance, participants lose their benefits not because of some violation of federal law, but rather because of the manner in which the plan is executed with respect to its contractual requirements of vesting or funding."); Staff of Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 44 (Comm.Print 1980) ("The bill imposes a Federal statutory duty to contribute on employers that are already contractually obligated to make contributions to multiemployer plans."). Furthermore, Congress clearly intended actions brought under ERISA to be interpreted by the courts "in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 5038, 5107. Actions under section 301 of the Labor Management Relations Act have typically been analogized to actions for breach of contract. See Hoosier Cardinal Corp., 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7.
 
 
 12
 For all of these reasons, the Wyoming ten-year statute of limitations for actions based on written contracts is the statute of limitations "most analogous" to the Trustees' ERISA action in the instant case. The action was, therefore, timely filed.II. Existence of a Contract
 
 
 13
 Morgen & Oswood argues on appeal, as it argued below, that no contract was formed on which to base liability for delinquent contributions. Morgen & Oswood argues that the August 9, 1979 "Laborers Compliance Agreement" did not constitute a binding contract. Morgen & Oswood contends that although Gary Harwood, its project superintendent, initialled the deletion of the provision that would have applied the "Laborers Compliance Agreement" only to the Sheridan Heritage Towers project, Mr. Harwood did not understand that there was a contract, because the Union had not yet signed the agreement.
 
 
 14
 As the district court noted, the parties' actions were not strictly consistent with their positions with respect to the existence of a contract. Although Morgen & Oswood's president testified that he felt the company was bound on the "Laborers Compliance Agreement" only for the Sheridan Heritage Towers and Mammoth Hot Springs projects, the notation originally placed in the agreement limited the contract only to the Sheridan Heritage Towers project. The December 29, 1981 letter from Morgen & Oswood stated that Morgen & Oswood was not bound to any labor contract, yet Morgen & Oswood made regular contributions for the Sheridan Heritage Towers and Mammoth Hot Springs projects during the period prior to the letter. Conversely, the Union's actions did not clearly demonstrate a belief that a contract was in effect. Despite the Union's policy of forwarding to employers copies of new trust fund agreements and revised fringe benefit and wage agreements of applicable collective bargaining agreements, the Union failed to send Morgen & Oswood any of those documents. The Union also failed to forward to Morgen & Oswood a copy of the August 9, 1981 "Laborer's Compliance Agreement" even after it was requested to do so. Throughout the period in question, the Union did not urge Morgen & Oswood to comply with its obligations under the "Laborers Compliance Agreement" for the eleven projects concerning which Morgen & Oswood was concededly failing to comply, despite several visits by Union representatives to Morgen & Oswood job sites.
 
 
 15
 After noting the inconsistency of the parties' positions, however, the district court found that the signed "Laborers Compliance Agreement" did constitute a contract. We agree. Although the Union had not yet signed the "Laborers Compliance Agreement" on August 9, 1979, when Mr. Harwood agreed to the deletion of the limitation on that agreement, Morgen & Oswood had no reason to believe that the Union would not sign the agreement, in light of Mr. Harwood's assent to the terms proposed by the Union. Despite the Union's failure to forward the signed agreement to Morgen & Oswood, it did sign the agreement without alteration or amendment. The trial court was, therefore, correct in finding that the August 9, 1979 "Laborers Compliance Agreement" constituted a binding contract between the parties.
 
 III. Repudiation of the Contract
 
 16
 The August 9, 1979 agreement was a "pre-hire" agreement, authorized by section 8(f) of the National Labor Relations Act, which allows construction industry employers and unions to enter into agreements setting the terms and conditions of employment for workers without the union first attaining majority status at the job.[13] In Jim McNeff, Inc. v. Todd, 461 U.S. 260, 270, 103 S.Ct. 1753, 1758-59, 75 L.Ed.2d 830 (1983), the Supreme Court stated that the voidable nature of pre-hire agreements gives the employer the right to repudiate the contract.[14] The Court expressly reserved, however, the question of what specific acts would constitute repudiation:
 
 
 17
 It is not necessary to decide in this case what specific acts would effect the repudiation of a prehire agreement--sending notice to the union, engaging in activity overtly and completely inconsistent with contractual obligations, or, as respondents suggest, precipitating a representation election pursuant to the final proviso in Sec. 8(f) that shows the union does not enjoy majority support.
 
 
 18
 Id. at 270 n. 11, 103 S.Ct. at 1759 n. 11. That reserved question is squarely presented in this case.
 
 
 19
 The Trustees argue that repudiation did not occur until March, 1982, when "complete" non-compliance with the agreement occurred.[15] In New Mexico District Council of Carpenters and Joiners of America v. Jordan & Nobles Construction Co., 802 F.2d 1253 (10th Cir.1986) (Jordan & Nobles ), this court held that "a project-by-project employer may void a Sec. 8(f) agreement with respect to any project in which hiring has not taken place." Id. at 1256. Morgen & Oswood was not, therefore, obligated to repudiate its agreement for all of its projects in order to repudiate effectively.
 
 
 20
 The Trustees also argue that Morgen & Oswood did not repudiate the agreement prior to its letter of December 29, 1981, because its conduct prior to that date did not constitute repudiation. This court has recognized that conduct, without more, may constitute repudiation. See Trustees of the Colorado Statewide Iron Workers (Erector) Joint Apprenticeship and Training Trust Fund v. A & P Steel, Inc., 812 F.2d 1518, 1524 (10th Cir.1987) (A & P Steel ). Although in that case brought by pension trustees against an employer to recover unpaid contributions due under collective bargaining agreements, we stated that "the record clearly does not support a claim of repudiation by conduct prior to the November 14, 1980 letter," id., we acknowledged that conduct alone could constitute repudiation. Furthermore, in Jordan & Nobles, this court found that an oral statement that the company was not going to abide by its agreement with the union by an employer's project supervisor to the union's business agent was sufficient to give the union notice of the employer's repudiation of the agreement. 802 F.2d at 1256. In that case, we did not rely on a letter, dated more than a month after the meeting, from the employer to the union, formally repudiating the agreement in writing. Id. at 1254.
 
 
 21
 In this case, the district court found that the Union was aware in the summer of 1981 that Morgen & Oswood was not hiring union labor for projects other than the Sheridan Heritage Towers and Mammoth Hot Springs projects, and that Morgen & Oswood considered the jobs on these other projects to be non-union. The Union was also aware that Morgen & Oswood was not making contributions for its other projects. Morgen & Oswood's conduct was sufficient to " 'put the union and the employees on notice that the agreement [was] terminated.' " Id. at 1255-56 (quoting Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Co., 733 F.2d 1321, 1326 (8th Cir.1984)). The lower court did not err in finding that Morgen & Oswood had repudiated its contract on the remaining eleven projects by July 31, 1981.
 
 IV. Laches and Estoppel
 
 22
 Finally, Morgen & Oswood argues that the Trustees were put on either real or constructive notice that Morgen & Oswood had repudiated the agreement by July, 1981 and were negligent because they failed to bring their lawsuit until October, 1984. Morgen & Oswood argues that the doctrines of laches and estoppel should operate to bar the Trustees' action. The district court rejected Morgen & Oswood's argument, stating: "While this Court has not been impressed by the conduct of the Union in this matter, the Court does not find that the plaintiffs should be estopped because of laches." I, R. 52.
 
 
 23
 In order to establish the defense of laches, Morgen & Oswood must show that the Trustees had full knowledge of the facts and unreasonably delayed assertion of its rights, which caused prejudice to Morgen & Oswood. A & P Steel, 812 F.2d at 1529. Laches is an equitable doctrine. The district court found that the Union had not notified the Trustees of Morgen & Oswood's non-compliance with the agreement, despite the Union's customary practice of notification in such cases. I, R. 43. We agree with the district court that the Trustees' action should not be estopped, because it would be inequitable in this case to impute the Union's knowledge of Morgen & Oswood's non-compliance to the Trustees.
 
 
 24
 The United States Supreme Court has recognized that the interests of a union and the interests of pension plan trustees do not necessarily coincide. Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 575-76, 105 S.Ct. 2833, 2842-43, 86 L.Ed.2d 447 (1985); Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 376 n. 22, 104 S.Ct. 1844, 1851 n. 22, 80 L.Ed.2d 366 (1984). Although the record in this case does not explain the Union's failure to notify the Trustees of Morgen & Oswood's non-compliance with the agreement, it cannot be assumed that the Union's interest in pursuing the matter was identical to that of the Trustees. Morgen & Oswood failed to establish an essential element of the defense of laches, that the Trustees had full knowledge of the facts and unreasonably delayed assertion of their rights. The equitable defense of laches must, therefore, be denied.
 
 
 25
 The district court's decision is AFFIRMED.
 
 
 
 *
 The Honorable Howard C. Bratton, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 29 U.S.C. Sec. 1132(a)(3)(B)(ii) (1982) permits a fiduciary to bring a civil action to enforce the terms of a benefit or pension plan
 29 U.S.C. Sec. 1145 (1982) states:
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 [2]
 Section 8(f) of the National Labor Relations Act, 29 U.S.C. Sec. 158(f), allows construction industry employers and unions to enter into "pre-hire" agreements setting terms and conditions of employment for workers without the union first attaining majority status at the job. See Jim McNeff, Inc. v. Todd, 461 U.S. 260, 266, 103 S.Ct. 1753, 1757, 75 L.Ed.2d 830 (1983). These "pre-hire" agreements are voidable until and unless the union reaches majority status at the particular job or "relevant unit." Id. at 269, 103 S.Ct. at 1758
 
 
 [3]
 Morgen & Oswood had signed a "Laborers Compliance Agreement" containing the notation that the agreement would apply only to one specific project, the Heritage Towers Project in Sheridan, Wyoming. After the Union's business manager notified Morgen & Oswood that the contract as annotated was unacceptable, Morgen & Oswood re-executed the agreement without the limitation
 
 
 [4]
 On July 1, 1981, the Union negotiated a new agreement with the Wyoming Contractor's Association. The new agreement required increased fringe benefit payments and increased wages. The Oregon trust agreements were revised on September 1, 1981. Copies of none of these new agreements were sent to Morgen & Oswood, despite the Union's "general practice" of sending copies of all such agreements to employers
 
 
 [5]
 The court assessed against Morgen & Oswood the total sum of unpaid contributions in the amount of $11,461.27, interest thereon in the amount of $5,943.56, an amount equal to interest of $5,943.56, auditor's fees of $2,469.75, reasonable attorney's fees of $5,580.14, and court costs of $765.64
 
 
 [6]
 Wyo.Stat. Sec. 1-3-115 provides:
 All actions upon a liability created by a federal statute, other than a forfeiture or penalty, for which no period of limitations is provided in such statute, shall be commenced within two (2) years after the cause of action has accrued.
 
 
 [7]
 In their Reply brief, the Trustees repeatedly asserted that they had brought their action under section 301 of the National Labor Relations Act, 29 U.S.C. Sec. 185. See Reply Brief of Appellants at 10, 11, 12, 13. The Trustees' Complaint, however, stated that "Jurisdiction is vested in this Court over this action by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA) at 29 U.S.C. Sec. 1132(a)(3)(B)(ii), and Sec. 1145." I, R. 6. Despite their contentions in their Reply brief, 29 U.S.C. Sec. 185 is not cited or otherwise referred to in the Trustees' Complaint
 
 
 [8]
 The statute of limitations contained in 29 U.S.C. Sec. 1113 applies only to actions brought to redress a fiduciary's breach of its obligations to enforce the provisions of ERISA
 
 
 [9]
 Every court that has considered application of the six-month statute of limitations contained in the National Labor Relations Act to a claim by trustees for delinquent contributions has rejected application of that statute in favor of a state statute of limitations. See, e.g., Trustees for Alaska Laborers-Construction Industry Health and Security Fund v. Ferrell, 812 F.2d 512, 517 (9th Cir.1987); Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1106-07 (6th Cir.1986) (en banc), cert. denied, --- U.S. ----, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987); O'Hare v. General Marine Transport Corp., 740 F.2d 160, 167-68 (2d Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); Carpenters Local Union No. 1846 of the United Brotherhood of Carpenters and Joiners of America v. Pratt-Farnsworth, Inc., 609 F.Supp. 1299, 1302 (E.D.La.1984)
 
 
 [10]
 The language of this section of the statute is virtually identical to that of the two-year statute of limitations in Wyo.Stat. Sec. 1-3-115. The eight-year statute is applicable to an action "upon a liability created by statute other than a forfeiture or penalty[.]" Wyo.Stat. Sec. 1-3-105(a)(ii)(B). The two-year statute is applicable to an action "upon a liability created by a federal statute, for which no period of limitations is provided in such statute[.]" Wyo.Stat. Sec. 1-3-115
 
 
 [11]
 Both of these statutes were enacted in the original Wyoming Civil Code, codified in the Laws of 1886. Wyo.Stat. Secs. 1-3-105, 109 (1977). The two-year statute of limitations applicable to federal causes of action was not enacted until 1943. Wyo.Stat. Sec. 1-3-115 (1977): effective date)
 
 
 [12]
 Because we find the two-year statute of limitations inapplicable, we need not, and do not, reach the Trustees' contention that Wyo.Stat. Sec. 1-3-115 is unconstitutional under the reasoning of then-District Judge Doyle in Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 775-76 (D.Colo.1964)
 
 
 [13]
 In this case, the parties have stipulated that the Union did not attain majority status at any of the jobs in question
 
 
 [14]
 At oral argument, the parties raised the question of the applicability of a decision by the National Labor Relations Board (NLRB) to this action. In John Deklewa and Sons, 282 N.L.R.B. No. 84, 124 LRRM 1185 (BNA) (1987), petition for review denied, International Association of Bridge, Structural and Ornamental Iron Workers, Local 3 v. National Labor Relations Board, 843 F.2d 770, 781-82 (3rd Cir.1988), the NLRB held that employers could not repudiate unilaterally agreements under section 8(f) of the National Labor Relations Act, and that the only way to test a union's majority status was through a Board-conducted election. The NLRB determined that this anti-repudiation rule should be applied retroactively to all cases pending before the NLRB at any stage. 282 N.L.R.B. No. 184. Post-Deklewa decisions are divided as to the retroactive application of the anti-repudiation rule to judicial, as opposed to administrative, cases. See Trustees of the National Automatic Sprinkler Industry Pension Fund v. American Automatic Fire Protection, 680 F.Supp. 731, 734 (D.Md.1988) (cases cited). This court need not address the applicability of the Deklewa decision in this case, because this case was not brought under section 301 of the Labor Management Relations Act, the parties have conceded throughout that Morgen & Oswood had the power to repudiate the agreement, and the issue was neither raised below nor briefed here
 
 
 [15]
 Although Morgen & Oswood indicated its intention to repudiate the agreement in its letter dated December 29, 1981, it did not cease making contributions on all projects until March, 1982